THE CITY OF NEW YORK, Appellant, *v.* THE VILLAGE OF LAWRENCE et al., Respondents.

430

((Argued February 13, 1929; decided March 19, 1929.)

*George P. Nicholson, Corporation Counsel (William E. C. Mayer, J. Joseph Lilly, Thomas W. A. Crowe* and *Robert J. Culhane* of counsel), for appellant. The act Laws of 1928, chapter 802, is an unconstitutional legislative enactment passed in violation of article 12, sections 2 and 7, of the Constitution of the State of New York; and it is null, void and of no effect. (*Schieffelin* v. *Warren,* 224 App. Div. 115; *Browne* v. *City of New York,* 241 N. Y. 120; *Matter of City of New York [Ely Avenue],* 217 N. Y. 45; *People ex rel. Henderson* v. *Supervisors,* 147 N. Y. 1; *Matter of Mayor, etc., of New York [Elm St.],* 246 N. Y. 72; *Hanrahan* v. *Terminal Station Comm.,* 206 N. Y. 494; *Browne* v. *City of New York,* 241 N. Y. 96; *Adriaansen* v. *Board of Education,* 222 App. Div. 320.) The act Laws of 1928, chapter 802, is a local law embracing more than one subject, which are not expressed in its title; and it was passed by the Legislature in violation of article 3, section 16, of the Constitution of the State of New York, and is, therefore, null and void. (*Matter of Mayor, etc., of New York*

[*Elm St.*], 246 N. Y. 72; *Economic P. & C. Co.* v. *City of Buffalo*, 195 N. Y. 286; *Parfitt* v. *Ferguson*, 159 N. Y. 111; *Rathbone* v. *Wirth*, 150 N. Y. 459.) By section 2 of the act Laws of 1928, chapter 802, the Legislature unlawfully assumed to construe and interpret judicially section 1 of the New York city charter; and such construction and interpretation, judicial in its nature, is null and void. (*Matter of Richardson*, 247 N. Y. 410; *Matter of State Industrial Com.*, 224 N. Y. 13; *Matter of Hirshfield* v. *Cook*, 227 N. Y. 297; *People* v. *Jaehne*, 103 N. Y. 182.)

*Robert J. Fox, Charles J. Nehrbas* and *Robert P. Schur* for property owners, *amici curiæ*. Chapter 802 relates to the " property, affairs and government " of the city and could, therefore, only be passed on an emergency message under section 2, article 12 of the New York Constitution. (*Matter of Mayor*, 246 N. Y. 72; *People ex rel. Rodgers* v. *Coler*, 166 N. Y. 1; *Gushee* v. *City of New York*, 42 App. Div. 37; *Van Dyke* v. *City of Utica*, 203 App. Div. 26; *Matter of Ninth Avenue*, 45 N. Y. 729; *Matter of Jaquino Realty Corporation* v. *Ormond*, 217 App. Div. 76; 247 N. Y. 528.)

*Edward S. Bentley* for village of Lawrence et al., respondents. The courts below correctly held that chapter 802 of the Laws of 1928 did not violate article 12, section 2 of the Constitution, the so-called Home Rule Amendment. (*Bank of Chenango* v. *Brown*, 26 N. Y. 469; *People ex rel. Henderson* v. *Board of Supervisors*, 147 N. Y. 1; *People ex rel. McLean* v. *Flagg*, 46 N. Y. 401; *Browne* v. *City of New York*, 241 N. Y. 96; *McGrath* v. *Grout*, 171 N. Y. 7; *People ex rel. Unger* v. *Kennedy*, 207 N. Y. 533; *People* v. *Kerr*, 27 N. Y. 188; *Hunter* v. *Pittsburg*, 207 U. S. 161; *Attorney-General* v. *Lowry*, 199 U. S. 233; *Hankins* v. *Mayor, etc.*, 64 N. Y. 18; *Fragley*

v. *Phelan*, 126 Cal. 393.) Chapter 802 of the Laws of 1928 does not violate section 16 of article 3 of the Constitution. (*Astor* v. *Arcade Railway Co.*, 113 N. Y. 93; *Sweet* v. *City of Syracuse*, 129 N. Y. 316; *Matter of Application of the Mayor of the City of New York*, 99 N. Y. 569; *People ex rel. Hayden* v. *City of Rochester*, 50 N. Y. 525; *Fort* v. *Cummings*, 90 Hun, 481.) Chapter 802 of the Laws of 1928 does not constitute an unlawful attempt to construe and interpret judicially section 1 of the New York charter. (*Mulry* v. *Norton*, 100 N. Y. 424; *O'Donohue* v. *Cronin*, 62 App. Div. 379; *Town of Hempstead* v. *Lawrence*, 147 App. Div. 624; *Bechtel* v. *Village of Edgewater*, 45 Hun, 240; 122 N. Y. 649; *Matter of City of Brooklyn*, 73 N. Y. 179; *Decker* v. *City of New York*, 216 App. Div. 334; 245 N. Y. 515; *People* v. *Board of Supervisors of New York*, 16 N. Y. 424; *Salters* v. *Tobias*, 3 Paige, 338; *People ex rel. Champlin* v. *Gray*, 185 N. Y. 196.)

*M. Linn Bruce, Fred Ingraham, Jr., Raymond Ballantine* and *H. Stuart McKnight* for the county of Nassau, respondent. Chapter 802 of the Laws of 1928 is presumed to be valid and constitutional, and it cannot be declared or treated as unconstitutional until it has been shown beyond reasonable doubt that it conflicts with the Constitution. (*People ex rel. Henderson* v. *Supervisors*, 147 N. Y. 1.) The enactment of chapter 802 of the Laws of 1928 was not in violation of section 2 of article 12 of the State Constitution. (*People* v. *Kerr*, 27 N. Y. 188; *Hunter* v. *Pittsburgh*, 207 U. S. 161; *Browne* v. *City of New York*, 241 N. Y. 96; *McGrath* v. *Grout*, 171 N. Y. 7; *People ex rel. Unger* v. *Kennedy*, 207 N. Y. 533; *Schieffelin* v. *Warren*, 224 App. Div. 115; *People ex rel. Cuff* v. *City of Oakland*, 123 Cal. 598; *Fragley* v. *Phelan*, 126 Cal. 383; *State* v. *Warner*, 4 Wash. 773.) Chapter

802 of the Laws of 1928 does not violate section 16 of article 3 of the Constitution. (*People* v. *City of Oakland*, 123 Cal. 598.)

*Hamilton Ward, Attorney-General* (*Robert P. Beyer* of counsel), for the State of New York. The legislation in question is not special as affecting the property, affairs or government of the city of New York. (*Bank of Chenango* v. *Brown*, 26 N. Y. 467; *People ex rel. Henderson* v. *Board of Supervisors of the County of Westchester*, 147 N. Y. 1; *People ex rel. McLean* v. *Flagg*, 46 N. Y. 401; *Laramie County* v. *Albany County*, 92 U. S. 307; *Kelly* v. *Pittsburg*, 104 U. S. 78; *Matter of Hollister* v. *City of Rochester*, 41 Misc. Rep. 569; 96 App. Div. 501; 180 N. Y. 518; *Reed* v. *Schmit*, 39 Hun, 223; *People ex rel. Coney Island Jockey Club* v. *Purdy*, 152 App. Div. 175; 207 N. Y. 695; *People ex rel. Welsh* v. *Dunn*, 168 App. Div. 678; 217 N. Y. 688; *McGrath* v. *Grout*, 171 N. Y. 7.) The object of the bill was duly expressed in its title. (*Economic Power, etc., Co.* v. *Buffalo*, 195 N. Y. 286; *People* v. *Sutphen*, 166 N. Y. 163; *Sweet* v. *Syracuse*, 129 N. Y. 316; *Van Brunt* v. *Flatbush*, 128 N. Y. 50; *Astor* v. *Arcade Ry. Co.*, 113 N. Y. 93; *Matter of Knaust*, 101 N. Y. 188; *People* v. *Howe*, 177 N. Y. 499; *People* v. *Banks*, 67 N. Y. 568; *People* v. *Commissioners*, 47 N. Y. 501; *Prentice* v. *Weston*, 47 Hun, 121; 11 N. Y. 460.)

LEHMAN, J. The boundary lines of the city of New York are described in the city charter. By chapter 802 of the Laws of 1928, entitled " An Act to define the boundary line between the city of New York and the town of Hempstead along the eastern and southerly boundary lines of the former village of Far Rockaway," the Legislature of the State has attempted to change the description of a boundary line of the city. The act is, undoubtedly, special or local in its terms and in its effect, and it was

not passed by the Legislature on a message from the Governor declaring that an emergency exists. The city of New York, in this action, claims that the act relates to the property, affairs or government of the city, and in the absence of such a message violates the provisions of section 2 of article XII of the Constitution of the State of New York.

A municipal corporation must from its nature have definite territorial limits. The State creates the municipality and fixes its territorial limits. Statutory description of these limits may, at times, leave room for dispute as to the exact location of a boundary line; experience may show, at times, that these territorial limits should be enlarged or restricted in the interests of the public. At such times, at least before article XII of the Constitution was adopted in its present form, the Legislature has had power to define anew the territorial limits of a city. It has used this power on several occasions in relation to the boundary line between the city of New York and the town of Hempstead (Chapter 466 of the Laws of 1901; Chapter 692 of the Laws of 1921).

The amendment of article XII of the Constitution commonly known as the Home Rule Amendment, approved by the people at the election of 1923, was intended to vest in the cities of the State increased control of their own property, affairs and government. Power to adopt and amend certain local laws relating to enumerated subjects is expressly conferred upon them. By general laws, the Legislature may confer upon them further powers of local legislation and administration. Enlargement of legislative powers by the city in relation to their " property, affairs or government " is balanced by restriction of the powers of the Legislature within the same field. In relation to such matters the Legislature may not pass any law which is " special or local, either in its terms or in its effect," except on message from the Governor

declaring that an emergency exists. In relation to other matters, the provisions of article XII of the Constitution "shall not be deemed to restrict the power of the Legislature." Existing charters must continue in force "until repealed, amended, modified or superseded in accordance with the provisions of this article." The description of the boundaries of the city of New York contained in the charter has been modified in accordance with the provisions of article XII if the special bill passed by the Legislature does not relate to the "property, affairs or government" of the city, within the meaning of those terms as used in the Constitution.

The act passed by the Legislature, which the plaintiff challenges in this action, does more than settle the location of a disputed boundary. True, there had been disputes as to the correct line, but there can be little doubt that the line, as defined in the act, is, at least in part, a new line. A strip of land varying in width from 100 to 400 feet and approximately a mile long is declared to be part of Nassau county, and there seems to be no dispute that some of this strip was included within the limits of the city of New York, as defined in the charter. Why the Legislature saw fit to annex to Nassau county any land which had previously been part of the city of New York does not appear in the record. If the Legislature had power to pass the act, the courts may not inquire into the reasons which moved the Legislature to exercise its power. If such inquiry were permissible, we might find indications in this record that the Legislature did not act arbitrarily; for it appears that a committee appointed by the Board of Estimate of the city of New York to confer with a similar committee from the county of Nassau, for the purpose of adjusting the boundary line, agreed upon the line subsequently fixed by the Legislature. Apparently the Board of Estimate failed to accept the report of the committee appointed by it.

By express command of the Constitution, it is the duty of the Legislature to provide for the organization of cities (Article XII, section 1). Such provisions have been inserted in earlier Constitutions of the State and constitute " merely directions for the exercise of an existing authority, and not its creation." (*Bank of Chenango* v. *Brown*, 26 N. Y. 467.) In the absence of express restrictions placed by the Constitution upon the exercise of its legislative powers, the Legislature may create or destroy, enlarge or restrict, combine or divide, municipal corporations. " Modifications of their boundaries may be made, or their names may be changed, or one may be merged in another, or it may be subdivided and the moities of their territories may be annexed to others." (*Mt. Pleasant* v. *Beckwith*, 100 U. S. 514; *Comrs. of Laramie County* v. *Comrs. of Albany County*, 92 U. S. 307.) They are political institutions, erected to be employed in the internal government of the State. Their power may be modified or the corporations themselves abrogated. (*People* v. *Morris*, 13 Wend. 325; *Matter of Gertum* v. *Board of Supervisors*, 109 N. Y. 170.) The State may determine the territory in which such political subdivisions of the State shall exercise the governmental powers conferred upon them (*Hunter* v. *Pittsburgh*, 207 U. S. 161) and the legislative power of the State includes complete discretion in regard to such matters. (*People ex rel. Shumway* v. *Bennett*, 29 Mich. 451; Dillon on Municipal Corporations, section 353.)

In some States the Constitution restricts the exercise of this legislative power by prohibitions against special acts creating municipal corporations or conferring upon them corporate powers. It has been held that such prohibitions render invalid a special act providing for the annexation of territory to a city (*State ex rel. Attorney-General* v. *City of Cincinnati*, 20 Ohio State, 18), but has no application to special legislation which merely detaches

territory; for in the latter event no corporate powers are conferred. (*Metcalf* v. *State*, 49 Ohio State, 586.)

The constitutional provision directing the Legislature to provide for the organization of cities and incorporated villages does not in terms provide that the legislation intended to carry out the direction shall be either special or general. Other provisions of the Constitution and the history of legislation in this State may throw light upon this subject. Article VIII, section 1, provides that " Corporations may be formed under general laws; but shall not be created by special act, except for municipal purposes, and in cases where, in the judgment of the Legislature, the objects of the corporation cannot be attained under general laws." Here we have an express recognition of the power of the Legislature to create municipal corporations by special act. The express prohibition against the passage of a private bill to incorporate villages (Article III, section 18) emphasizes that no such limitation was implied in relation to the creation of cities.

The Legislature has, at times, provided by general law systems of governments for cities. (General City Law, chapter 26, Laws of 1909; Second Class Cities Law, chapter 55, Laws of 1909.) It has at times, by general law, given to cities a voice in the determination of the kind of charter which might meet their special needs. (Optional City Government Law, chapter 444, Laws of 1914.) Since the Home Rule Amendment to the Constitution, it has by general law given cities a limited power to frame their own charter. (City Home Rule Law, chapter 363, Laws of 1924.)

None of these general laws have provided for the creation of cities, but merely for their government when created. The creation of the city as a subordinate governmental agency or political institution, and the determination of the territory in which that agency should function, are matters of general public interest,

and when the Home Rule Amendment to the Constitution was adopted it was the established policy of the State that the Legislature might by special act exercise its discretion in such matters.

It is difficult to perceive in that amendment any attempt to limit the powers of the Legislature in the creation of new cities or to change, in this respect, the established policy of the State. The provisions of article VIII, section 1, of the Constitution, recognizing the power of the Legislature to form corporations for municipal purposes by special act, have not been expressly repealed or amended. Limitation upon that power must be found, if at all, in the provisions of section 2 of article XII, which prohibits the Legislature from passing a special or local law " relating to the property, affairs or government of cities," except on message from the Governor that an emergency exists.

It may hardly be doubted that the creation of a new city and the determination of its boundaries do not relate " to the property, affairs or government of cities " as used in the amended Constitution. These words were used in article XII, section 2, of the Constitution before the Home Rule Amendment. Then the Legislature might enact special laws relating to such matters, but after a bill was passed by both houses, it was in such case transmitted to the mayor of the city or cities affected, for acceptance or rejection. The intent of these provisions of the Constitution was to provide some measure of protection to a city from possible danger of ill-considered interference by the Legislature in its local affairs. Opportunity was afforded to a city to present objections before a special law relating to its property, affairs or government could become effective, but a non-existent city can have no property, affairs or government, and no officers could voice objections in its behalf. The Legislature was free to create, and did create, new cities by special law, and article XII, section 2, of the Constitu-

tion in its original form could have no application to laws passed for that purpose.

The Home Rule Amendment to the Constitution, as we have pointed out, has enlarged the legislative powers of cities and restricted the legislative powers of the Legislature within the field of matters relating to the property, affairs and government of cities. It has no operation outside of that field, nor has it changed the description of that field contained in the Constitution before the amendment. Its limits remain as they were before, and the creation of cities and definition of the boundaries of the territory under their jurisdiction remain outside of that field. Here the power of the Legislature is plenary.

The power to enlarge or restrict the boundaries of an established city is an incident of the legislative power to create and abolish municipal corporations and to define their boundaries. (Dillon on Municipal Corporations, sections 355 and 356.) Legislation relating to the boundaries of political divisions of the State is a matter of State concern, and its benefits extend beyond the limits of the property, affairs and government of the city which is affected. Indeed, though it is not uncommon in this country for a State to provide, by its Constitution or by general law, that the determination of whether a particular territory shall be embraced within a municipal corporation should be left under appropriate restrictions to the electors of the territory affected, it is at least doubtful whether a grant to a municipality of power of local legislation in matters relating to its property, affairs or government would include a power to change its boundaries. The boundaries of the territory over which a municipal corporation exercises governmental functions must be definitely fixed. (*People ex rel. Underwood* v. *Patchogue,* 171 App. Div. 347; affirmed, 217 N. Y. 466.) Without the sanction of the State, no municipality can annex or disconnect territory within the municipal

boundaries. (Dillon on Municipal Corporations, section 356; *City of Hastings* v. *Hansen*, 44 Nebraska, 704.) A local law enacted by a city compelling the annexation of territory would constitute legislation in regard to territory beyond the limits of the city's territorial jurisdiction when the local law is passed. It would, therefore, clearly extend beyond the property, government and affairs of the city. A local law of a city which compels the disconnection of territory from the city might likewise be subject to similar objections, since exclusion from the territorial limits of the city would ordinarily result in the inclusion of the excluded territory within the jurisdiction of another governmental agency, institution or subdivision.

In the present case it is quite clear that however broad might be the power of local legislation of the city of New York in regard to its own property, government and affairs, it could not have passed the statute of which it now complains. The narrow strip of land excluded from the city of New York cannot be left outside of the governmental subdivisions of the State. Exclusion from the city of New York and the county of Queens must naturally result in inclusion in a contiguous county and town, and, of course, the city of New York has no authority to change the boundaries of other divisions of the State. Undoubtedly, therefore, the act of the Legislature relates to a matter of State concern extending beyond the field where the power of the Legislature to enact special or local laws is restricted. Nevertheless, annexation or disconnection of territory subject to the governmental jurisdiction of a city does in greater or lesser degree affect the property, affairs or government of the city. Our problem reduces itself to the determination of whether in this case, though the act relates to matters of State concern extending beyond the field of the property, affairs or government of the city, it may be said to

encroach upon the field as defined in the Constitution, in which the legislative power of the Legislature is restricted.

The Constitution has defined that field in general terms. By the process of inclusion or exclusion in specific cases, the courts may gradually give to such general terms a definite meaning. Perhaps we should not attempt other form of definition when the Constitution uses general terms. (*Ex parte Braun*, 141 California, 204; McBain, Law & Practice of Municipal Home Rule.) Slight variations in the terms or effect of statutes may bring varying result. The language of the constitutional provision is intended to embody its spirit, and no general judicial definition of that language should enlarge or restrict either the letter or spirit of the Constitution.

The question of whether a law relating to a change of boundaries of an existing city relates to the property, affairs or government of the city has never been presented to this court. Somewhat similar questions have arisen in other States. The Constitution of California provides that cities and towns and their charters are subject to and controlled by general laws " except in municipal affairs." It was held that a general law permitting territory to become annexed to and incorporated with a city by the mutual action of the city and the inhabitants of such territory does not relate to " municipal affairs." (*People ex rel. Cuff* v. *City of Oakland*, 123 Cal. 598.) In New Jersey the Legislature may not by special or local law regulate the internal affairs of towns. It has been held that in spite of this constitutional restriction, " existing lines may be changed by local and special laws." (*Miller* v. *Greenwalt*, 64 N. J. L. 197.)

It may be that such decisions where both statute and constitutional provisions are not identical with those involved in our problem can give us little help in its solution. We cite them merely because they show that in other States constitutional provisions intended to provide a measure of home rule for municipal corporations

have been held not to apply to legislative measures changing boundary lines. We have found no cases where under similar circumstances similar provisions have been given a wider scope.

In this State we have found no case where the words "relating to the property, affairs or government of cities" have been held to include legislation which does not deal directly with the internal affairs of a city or the functions of its officers, and which affects the welfare of the general public as well as the residents of a city or cities. In *McGrath* v. *Grout* (171 N. Y. 7) the courts considered the nature of laws which were entitled: "An act to make the office of (clerk of the county of Kings, or sheriff, or register, of the county) a salaried office and regulating the management of said office." The county of Kings then, as now, was included wholly within the city of New York, and provision was made in the charter of New York for the conduct of its business. Nevertheless the State retained its sovereign right of control of the county. The law abolishing the fees of county officers consequently related to a matter of State concern. Abolition of the fees of the county officers was joined to a provision that all moneys received by the county officer shall be paid into the treasury of the city and that the expenses of conducting the office shall be a charge upon the city. To that extent, therefore, the law affected the property, affairs and government of the city. Nevertheless the court said: "The city is only concerned with receiving the moneys and with the duty of paying the expenses connected with conducting the office. In other words, the Legislature has changed the system of compensation from fees, or commissions, to fixed salaries and thus brought the expenses of maintaining the office within the general provisions of the Greater New York charter, which have been adverted to. The act does not affect the city government, its property, or its particular affairs." The rule in that case was carried

a step further in the case of *People ex rel. Unger* v. *Kennedy* (207 N. Y. 533). There the court held that a law creating a new county within the limits of the city of New York did not relate to the property, affairs or government of the city.

Other laws which related to matters of State concern and affected the public at large have been held not to relate to the property, affairs or government of cities, though they conferred new powers upon city officers and imposed new liabilities upon the city of New York. In *Admiral Realty Co.* v. *City of New York* (206 N. Y. 110) the validity of the Rapid Transit Act was attacked as a special city law, and the court said: " It [the statute] was adopted not only for the benefit of the cities which, of course, would be affected, but of the public at large, and it confers broad powers, including that of the granting of franchises. It is a much more general law than is contemplated by the provision in question." Again, the court held in *Matter of McAneny* v. *Board of Estimate* (232 N. Y. 377) that chapter 134 of the Laws of 1921 amending the Public Service Commissions Law did not relate to the property, affairs or government of the city of New York, though it created a Transit Commission for cities containing a population of more than one million inhabitants, and imposed upon the Board of Estimate and Apportionment the duty of appropriating such sums of money as the Commission shall certify to be necessary to enable it to perform properly the duties imposed upon it.

There are obvious distinctions between the effect of statutes under consideration in these cases and the law which the city now attacks. Nevertheless, the decisions point the way to the solution of our problem. The Constitution both before and after the Home Rule Amendment left the power of the Legislature unrestricted except in matters relating to the property, affairs and government of cities. The Home Rule Amendment,

indeed, expressly provides that the "provisions of this article shall not be deemed to restrict the power of the Legislature to enact laws relating to matters *other* than the property, affairs or government of cities." (Article XII, section 4.) In this case, as in the earlier cases, the law which is attacked relates to a matter of public concern, and its effect extends beyond the limited field of municipal property, government and affairs. The earlier cases establish, we think, that the power of the Legislature in relation to such matters is not restricted because as a necessary incident the action by the Legislature may in some degree affect the property, affairs or government of a city. The constitutional amendment does not, we think, enlarge the field of restriction. (See McBain, New York Proposal for Municipal Home Rule, 37 Political Science Quarterly, 655.)

We recognize that, conceivably, in some cases the effect of a change of the boundaries of a city upon its property, affairs or government might be very serious. Disconnection of territory might render the existing form of government of a city inappropriate to meet the needs of its altered boundaries. It might place outside of the altered boundaries property of the city of substantial value. We do not now pass upon such a situation. Perhaps in determining whether a law relates to matters other than the property, affairs or government of a city we must weigh opposing considerations and classify according to the substantial effect of the statute. We do not now attempt to measure such considerations nor assign to each a relative weight, for here the incidental effect of the statute upon the property, affairs or government of the city is so slight as to be almost illusory.

We have pointed out the narrow limits of the territory which is assigned by the act to the county of Nassau. The strip of land is substantially unoccupied. It is stated in the record that "there are no public buildings or structures of any character or any property of any nature

whatsoever of the city of New York in the said territory."
It appears that there is a dirt road within the detached
strip. It does not appear whether the title to the fee of the
road is in the city. Such title would, in any event, be held
in trust for the People of the State, and it would appear
that the road is of special benefit to residents of the
adjacent territory. There are no sewers in the territory,
no city water pipes or city light poles or wires. Under
such circumstances we hold that a law relating to a change
of boundaries between a city and an adjacent town relates
to a matter " other than the property, affairs and govern-
ment of cities." Here the Legislature has exercised the
sovereign legislative power of the State upon a political
matter which affects not only the city but other parts
of the State and the effect upon the city is confined to
a slight diminution of the territory subject to its juris-
diction. Where a change in the territorial boundaries of
a city brings in its train substantial change in the city's
internal affairs, its property or its government, then the
problem would have a somewhat different aspect. We
leave the solution of such problems till they arise.

The law provides for the repayment of taxes imposed by
the county of Nassau or the town of Hempstead upon
lands which are declared to be within the city of New York
upon which the city of New York has also levied taxes.
It further provides for the annexation to the village of
Lawrence of any land which has been disconnected from
the city through the new definition. These sections of
the law are germane to the subject expressed in the title
of the bill: " to define the boundary line between the
city of New York and the town of Hempstead." All
matters fairly and reasonably connected with the general
purpose or object as expressed in the title of a local law
" and all measures which will or may facilitate its accom-
plishment, are proper to be incorporated in the act and are
germane to the title." (*Economic Power, etc., Co.* v.
*City of Buffalo,* 195 N. Y. 286; *People ex rel. Corscadden*

v. *Howe*, 177 N. Y. 499; *Sweet* v. *City of Syracuse*, 129 N. Y. 316.) The act does not violate article III, section 16, of the Constitution.

The second section of the act, providing for the refund of certain taxes by the county of Nassau, is preceded by the words: " It is hereby declared to have been the intention of the Legislature of the State of New York in heretofore establishing the boundary line between the city of New York and the town of Hempstead to fix and establish the same in accordance with the foregoing description." The Appellate Division has certified the question whether that provision is an " unlawful assumption of judicial interpretation of the Greater New York Charter."

The validity of the statute defining the boundary line between the city of New York and the town of Hempstead does not depend upon the legislative declaration that the Legislature by an earlier statute intended to fix and establish the same line. The Legislature may at its will, subject only to constitutional restrictions, change a boundary line after it has been established. The Legislature has exercised that power in this case. It has placed its own construction upon the earlier statute, but only as a preface to the provison for the refund of certain taxes by the county of Nassau. No existing rights of the city of New York are affected by this provision. Obligation thereunder is confined to the county of Nassau. Doubtless the legislative construction of the earlier statute is without binding force in any judicial proceeding. We cannot say that the Legislature has here attempted to interpose its authority upon the courts in regard to the construction of the earlier statute. In any matter brought before the courts in which rights of any party may be dependent upon the proper construction of the earlier statute, the courts are still free to place their own construction upon it, which may be contrary to the construction placed upon it by the Legis-

lature. The validity of the provisions of the later statute does not depend upon the declaration of the legislative construction of the earlier statute. That declaration may be disregarded by the courts. (*People v. Board of Supervisors of New York*, 16 N. Y. 424.)

In this case we are not advised of any lack of power in the Legislature to enact all the provisions of the act, though the line defined by the act be a new line rather than a more accurate definition of an old line. No private rights as distinguished from political rights are affected or created by any provision of the act except possibly the right to recover taxes assessed by the county of Nassau upon land included in the city of New York. If a new obligation is created against the county of Nassau, it does not complain and we are not at the present time called upon to determine whether it might do so if it chose. Indeed, there is not in this record any claim or evidence that any land is now included in the city of New York which was not within its territory under the charter description. It follows that even if the Legislature had unlawfully assumed to give a judicial interpretation to the New York charter, the validity of its action in giving a new definition to the boundaries of the city cannot be challenged on that ground. The answer to the fourth question certified by the Appellate Division is, therefore, not decisive of the appeal.

The order should be affirmed, with costs, and the first, second and third questions certified answered "No;" fourth question not answered.

CARDOZO, Ch. J., POUND, CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Order affirmed, etc.