NEW YORK STEAM CORPORATION, Plaintiff, *v.* THE CITY OF NEW YORK, Defendant.

Supreme Court, New York County, October 17, 1934.

*Shearman & Sterling* [*C. Garver* of counsel], for the plaintiff.

*Paul Windels, Corporation Counsel* [*W. H. King* of counsel], for the defendant.

SCHMUCK, J.   Aroused by a sense of abuse, the plaintiff assumes the role of pioneer to test the legality of imposts enforced by the defendant and finding their justification in special legislation the constitutionality of which is herein challenged.   Admonished that the importance of the controversy is not to be discovered in the amount of money sought to be recovered as paid under protest, but rather in a judicial pronouncement as to the right of a municipality to exercise a function asserted to be that of the Legislature alone, the court not merely accepts but welcomes the participation, suggestion and arguments of all those who offered themselves as *amici curiæ*.   While the collection of the tax was pursuant to Local Law No. 19 of 1933, as amended by Local Law No. 31 of 1933, it is contended that chapter 815 of the Laws of 1933, popularly known as the Buckley Act, under authority of which the local law was passed, is unconstitutional.   Chapter 815 was enacted at the behest

of the Governor of the State as an emergency measure, but without a two-thirds vote. In the title the purpose of the act is thus stated: " An act to relieve the people of any city of the state, having a population of one million inhabitants or more from the hardships and suffering caused by unemployment and the effects thereof on the public health and welfare, by temporarily enabling any such city to adopt and amend local laws imposing in any such city any tax which the legislature has or would have power and authority to impose; to limit the application of such local laws to the period commencing September first, nineteen hundred thirty three and ending February twenty eighth, nineteen hundred and thirty four, and to limit the use of the revenue derived from such taxes to the defrayal of the cost of granting unemployment relief to any such city."

The most critical examination of the law fails to discover any specification of the nature of the tax to be raised by the " city of the state having a population of one million inhabitants or more." It merely authorizes the adoption of local laws through the local legislative body of such city, imposing any tax which the Legislature has or would have the power and authority to impose. Furthermore, the tax was to be effective only within the territorial limits of the city for the period between September 1, 1933, and February 28, 1934, and was exclusively to defray the cost of home and work relief and the interest on certificates of indebtedness issued to obtain funds for that purpose and to redeem the certificates. Pursuant to this enabling statute, the city of New York devised Local Law No. 19 imposing upon any corporation, copartnership or person subject to the supervision of the Public Service Commission an excise tax of one and one-half per cent of the gross monthly income for the period of September 1, 1933, to February 28, 1934, and providing for the disposition thereof pursuant to chapter 815 of the Laws of 1933. Compelled to pay the tax thus levied, the plaintiff and its abettors now attack the constitutionality of the law on the ground that it is a special or local law relating to the property, affairs or government of cities, and, as such, can only be passed by a two-thirds vote of both houses of the Legislature as provided by article 12, section 2, of the Constitution. In addition, it is urged that the Legislature in evolving chapter 815 abdicated its plenary power to tax for a definite period without definition of, or restriction upon, the persons or property to be taxed. The unconstitutionality of this procedure, plaintiff contends, is obvious from a consideration of article 1, section 3, and constitutes a violation of section 1, article 12, which requires the Legislature to restrict the power of cities to tax in order to prevent abuses. These constitutional questions are

fundamental and of serious gravity and require a discussion at some length of the Home Rule Amendments to the Constitution adopted in 1923.

Article 12, section 3, is the famous blanket Home Rule proviso incorporated in the Constitution, whereby cities are given power to pass local laws on matters which ordinarily would be within the sole province of the Legislature. It reads as follows: " Every city shall have power to adopt and amend local laws not inconsistent with the constitution and laws of the State, relating to the powers, duties, qualifications, number, mode of selection and removal, terms of office and compensation of all officers and employees of the city, the transaction of its business, the incurring of its obligations, the presentation, ascertainment and discharge of claims against it, the acquisition, care, management and use of its streets and property, the wages or salaries, the hours of work or labor, and the protection, welfare and safety of persons employed by any contractor or sub-contractor performing work, labor or services for it and the government and regulation of the conduct of its inhabitants and the protection of their property, safety and health. The Legislature shall, at its next session after this section shall become part of the constitution, provide by general law for carrying into effect the provisions of this section."

As our interest impels us to study the Constitution further we discover that article 12, section 4, provides that the power of the Legislature to enact laws relating to matters other than the property, affairs and government of cities shall not be deemed restricted by the provisions of the said article. As we read section 5 we learn that " the Legislature may, by general laws, confer on cities such further powers of local legislation and administration as it may, from time to time, deem expedient." Thus the restrictions and limitations of section 3, article 12, are qualified, if not virtually destroyed. In *City of New York* v. *Village of Lawrence* (250 N. Y. 429, 435) we receive the juridical interpretation of the scope and effect of these sections. In this manner decrees the court: " The amendment of article XII of the Constitution, commonly known as the Home Rule Amendment, approved by the people at the election of 1923 [See Laws of 1923, p. 1765], was intended to vest in the cities of the State increased control of their own property, affairs and government. Power to adopt and amend certain local laws relating to enumerated subjects is expressly conferred upon them. By general laws, the Legislature may confer upon them further powers of local legislation and administration. Enlargement of legislative powers by the city in relation to their ' property, affairs or government ' is balanced by restriction of the powers of

the Legislature within the same field. In relation to such matters, the Legislature may not pass any law which is ' special or local, either in its terms or in its effect,' except on message from the Governor declaring that an emergency exists. In relation to other matters, the provisions of article XII of the Constitution ' shall not be deemed to restrict the power of the Legislature.' "

In this wise is the purpose of section 3 made obvious and clear. By it, wide power of legislation is given to the cities of the State regarding their affairs. In order to remove this power from the realm of theory and to give practical and actual home rule without constant or harassing interference or tinkering with local matters by the Legislature, section 2 of article 12 restricts the power of the Legislature to pass legislation relating to the property, affairs or government of cities by special or local laws. Such legislation can only be enacted by the State body when initiated by an emergency message from the Governor and upon concurrent action of two-thirds of the members of each house of the Legislature. Never for a moment can the Home Rule Amendment be forgotten or disregarded in construing this restriction upon the power of the State Legislature. The cities having been given power to adopt local laws in connection with their property, affairs or government in certain specified instances enumerated in section 3, article 12 (*Browne* v. *City of New York*, 241 N. Y. 96, 119), the unanswerable corollary is that it could not be the desire of the sovereign will to permit this power to be emasculated by constant legislative intrusion. The citizens, to be sure, realized that conditions might arise where it would be wise for the Legislature to take the initiative in adopting a special or local law, even though the city had authority to do so but had not exercised it. To justify such a course, however, an emergency message from the Governor and a two-thirds vote of the Legislature are inescapable requirements. And as regards the powers mentioned in section 3 over which the Legislature retains concurrent jurisdiction in an emergency, the Constitution has specifically guarded against legislative interference by a subterfuge which would avoid these two indispensable requisites of an emergency message and a two-thirds vote. It was prohibited from passing any law relating to the property, affairs or government of cities which shall be special or local either in its terms or effect save in the appointed manner specified in section 2.

At the time of the adoption of this amendment it had been a uniform construction that a statute was special or local which names the particular locality. As is written in *Matter of Henneberger* (155 N. Y. 420, 430), " We shall adhere to the rule, now settled, that an act embracing all things of a certain class is a general and

not a local act; although by reason of some limitation, based on population or other condition, only a particular locality can, in the actual situation, receive its benefits." To the same effect is *Holbrook, Cabot & Rollins Corporation* v. *City of New York* (277 Fed. 852). Having this in mind the Legislature might pass an act applicable to cities of over a million inhabitants, which in accordance with the aforementioned rule would be a general law and yet in effect would apply only to New York city. In this manner escape from the restriction of an emergency message and a two-thirds vote might be effected. To prevent this the Constitution provides (Art. 12, § 2) that a law *special in terms or in effect* is governed by the same restriction. Indisputably this implies that even though the statute is garbed as a general law, if its effect is to apply to one locality it will be unmasked and the restriction of article 12, section 2, applies. (*Matter of Mayor, etc., of New York* [*Elm Street*], 246 N. Y. 72.)

Examining the statute herein involved we find that it confers a general taxing power for a definite period. Immediately we recognize that this power is not included among those specified in article 12, section 3. At this point we are reminded that the Legislature by the General City Law, section 20, subdivision 4, had previously conferred upon the city the right " to levy and collect taxes on real and personal property for any public or municipal purpose." This patently limited the taxing power of the city and did not permit, but rather inhibited it from levying a general tax by virtue of any local law except within the right granted cities by a general law of the Legislature. This, however, does not mean that this power could not be extended by the Legislature beyond the restriction contained in the General City Law. Beyond doubt this could be done by a general law applicable to all cities, or by a general law giving to all cities power of local legislation in addition to those designated in article 12, section 3. The authority for this is discoverable in section 5, article 12. If this concept be true, the extension of power to levy tax beyond the right given by section 3 cannot be controlled by section 2. In short, the ordinary routine method of adopting legislation would suffice, and, therefore, neither emergency message nor a two-thirds vote would be necessary.

Chapter 815 of the Laws of 1933, with which we are now concerned, obviously confers, by a law general in terms though not in effect, added power upon New York city to adopt local law beyond the matters specified in section 3. Because the effect of this law was to give New York city a power not delegated to any other municipality in the State plaintiff intimates that it violates section 2, and advances *Robia Holding Corporation* v. *Walker* (257 N. Y. 431)

as sustaining the proposition advanced. In that authority we glean this utterance of Judge LEHMAN (at p. 437): " Though the Legislature, under the Constitution, may still confer new powers upon a city, the method of the exercise of that power is subject to restrictions imposed by the Constitution."

No matter how read, this case does not hold that additional local powers could only be granted to a city under and by an emergency message from the Governor and a two-thirds vote of the Legislature. On the contrary, the language of the learned judge in *City of New York* v. *Village of Lawrence* (*supra*) indicates that the source of authority for enlarging the power of cities to amend local laws was to be found in section 5 and not in section 2 of article 12, for nothing could be plainer than his statement that " by general laws, the Legislature may confer upon them [cities] further powers of local legislation and administration." From all of this the inevitable *sequitur* ensues that the enlargement of the power of cities of over a million inhabitants to pass local laws by which sources of taxation other than real and personal could be tapped, could only be accomplished under the authority of section 5, and that such authority could be conferred only by a general law.

Is the Buckley Act a general law? It refers to cities having a population of a million inhabitants or more. A statute so phrased is a general law although in effect there is only one city in the State to which it applies. Does this make it a local law to which the authority of section 5 does not apply? We may not read into the constitutional provision words which are not therein contained. While section 2 prohibits the passage of laws local in terms or in effect, the interpolation of the words " in effect " does not change the distinction between general laws and special laws as construed in *Matter of Henneberger* (*supra*) except in relation to the objects specified in section 2. So far as section 5 is concerned, nowhere can be found any expression that a law general in terms will, nevertheless, be held special or local if its effect is local. The distinction between section 2 and section 5 of article 12 does not contravene the letter, much less the spirit of the constitutional provisions. To declare the acknowledged difference between section 2 on the one hand and section 5 on the other to be founded on a quibble is an absurdity, rash and unsupportable. It seems reasonable to hold that the purpose of section 2, article 12, was to prevent a nullification of the Home Rule powers granted to cities in leaving a loophole by which the Legislature could still in the guise of legislation couched in general terms pass laws designed to affect only a single locality. There can be no such abuse when the Legislature enlarges a power, and the authority for such enlargement of power is discoverable in

article 12, section 5. It is beyond debate that enlargement of power must be accomplished by a general law. Consequently, a law, general in terms although special in effect, may yet satisfy the technical provisions of the last-mentioned section of the Constitution. It, therefore, follows that the objection based upon article 12, section 2, as to the mode of passage of chapter 815 of the Laws of 1933, must be overruled and the contention of the plaintiff in this respect disapproved. The Buckley Act was validly enacted pursuant to the provisions of section 5 of that article.

We now approach the second important objection to the constitutionality of the law, to wit, that the Buckley Act was an illegal delegation of power by the Legislature to the local government. The general objection that the Legislature may not delegate its taxing power is not well taken, for we find in *Gautier* v. *Ditmar* (204 N. Y. 20, 27) the following: " It [the power of taxation] cannot be delegated, except as the legislature may confer upon the municipalities or political divisions, which are through the local authorities representatives of the people and participants in the government of the State, powers of providing revenue for local government and public purposes."

It cannot be and is not seriously disputed by the plaintiff that a delegation of power to levy a tax of a particular character may not be conferred by the Legislature upon a municipality. It is, however, strenuously argued that the law herein and hereby challenged gives to the city a blanket and unlimited power to levy taxes without restriction. This, it is contended, violates the mandate of section 1, article 12, of the Constitution, which makes it the duty of the Legislature to restrict the power of cities to tax, " so as to prevent abuses."

Scrutinizing the act itself, it appears that while it does not specify the sources of revenue, it is sufficiently restrictive to comply with the Constitution. The limitation of the exercise of power for a short period, the restriction of the application of the revenue obtained to unemployment relief and to the liquidation of certificates of indebtedness raised for that purpose, and the further limitation of the scope of the exercise of that power to local transactions, are collectively of sufficient circumscription to prevent abuse. It would seem that the form of legislation by which the city was given the power to explore its own sources of revenue and to levy taxes for a defined period, was more conducive to home rule than if the Legislature had specified the particular source from which the revenue should be obtained. Again, the local law passed in accordance with the enabling act fully names the sources of taxation and complies thoroughly with the directions contained in chapter 815

of the Laws of 1933. It is to be borne in mind in this connection that the State law is not in itself a tax statute, but rather an extension and enlargement of power of the municipality so as to adopt a taxation law of local application for relief purposes continuing for a limited time, namely, September 1, 1933, to February 28, 1934. Therefore, in order to meet the final arguments of the plaintiff as to the injustice and unfairness of the law, we must look at the local law itself and not at the enabling statute passed by the Legislature. No matter how, by whom or when created, has a tax law ever given universal satisfaction or dealt with abstract justice or fairness to all. And yet that alone, in the absence of other circumstances, is insufficient to challenge, much less defeat, its validity. In *Genet* v. *City of Brooklyn* (99 N. Y. 296, 307) it is written: " There is no constitutional guaranty that taxation shall be just and equal, although a law plainly departing from the principle of equality in the distribution of public burdens, would be justly obnoxious as contrary to natural equity, and as practical confiscation, but the remedy must ordinarily be found in an appeal to the justice of the legislature."

If there be any qualification of the foregoing rule it is that the establishment of the class to whom the tax is applicable " must have some basis, reasonable or unreasonable, other than mere accident, whim or caprice." (*People ex rel. Farrington* v. *Mensching*, 187 N. Y. 8, 18.) Tested by these standards the displeasure of the plaintiff is unreasonable and perhaps selfish, its objections unfounded and its complaint lacking in legal basis.

Thus far naught has been said about the importance of unemployment relief in this emergency, because exposition previously made was deemed sufficient to dispose of plaintiff's constitutional objections. It may not be amiss, however, lest ignoring this vital subject lead to misunderstanding, to indulge in some additional observation on this point. Plaintiff argues that the object of the taxing measure is entirely within the city's scope and that it deals entirely with the " property, affairs or government " of the city. This point is made in order to emphasize the necessity of a two-thirds vote in passing such a measure, in accordance with article 12, section 2.

While it is true that the ordinary care of the indigent and improvident and the relief of distress is a matter of concern to the particular locality which it harasses, unemployment relief necessitated by unprecedented and unforeseen economic depression is a concern which is far beyond the powers of the locality. Conceding that the wealth of the city of New York is relatively immeasurable, yet to marshal it legally for the desired purposes requires, particularly in this instance, the authority of the State. Furthermore, it is not

alone desirable that the city should be enabled by authority from the State to give unemployment relief, but it is imperative, at least in this emergency, that the State direct it to do so. More than the well-being of the city is involved. The safety, welfare and happiness of the entire State and nation are bound up in such measures. The question and its resolution wipe out political and geographical demarcation and in concern and effect are not only far reaching but all-encompassing.

It might be asked why, under these circumstances, did not the Legislature directly pass relief measures. The Governor's message shows the inadvisability, after the sums of money the State has already spent in providing relief — thus recognizing its responsibility in that direction — to provide further general funds for that purpose lest the initiative and the sense of responsibility of local communities be weakened, if not destroyed. For this reason, perchance, the Governor recommended enabling laws applicable to the city whereby it could raise funds for the purpose in view. To accomplish this was a question of vital and engaging interest. If the city of New York had been specifically named in the Buckley Act, article 12, section 2, would have applied and a two-thirds vote would have been necessary. In the absence of such a vote no legislation could have been passed and the city would have been impotent to provide funds for the greatest and most troublesome problem in its history, since it had substantially no other taxing powers beyond the power to tax the already overburdened real property. True, the Legislature could have passed a general law applicable to the entire State, but — and this qualification is portentous — there were reasons which rendered it inexpedient to use that method. The only method in the face of the absence of a two-thirds vote of the Legislature was to frame the measure in accordance with the provisions of article 12, section 5, of the Constitution of the State of New York. So far as the question here involved this was done in legal form.

Judgment dismissing the complaint on the merits is hereby granted.