Breitel, J.
Involved is a disputed proposed annexation between a city and a town. As is all but inevitably the situation, the city would expand by taking in a small part of the town. The town resists the annexation, seeking to preserve its area and retain its taxable enterprises. The population of the affected area may or may not welcome the annexation, this being a disputed fact. The City of Mechanicville has been declining both in population and economic health. A significant, if not a sufficient, cause for this condition is the constraint of limited boundaries. It seeks to annex from the Town of Halfmoon an adjoining, largely-unpopulated area of 1,220 acres including a railroad segment and containing a large power plant and a small paper mill. Halfmoon consists of 17,495 acres, and has a population of 6,307. The city has today a population of about 6,000, down from 8,514 in 1925, and occupies an area of nine tenths of a square mile. The city hopes that the sparsely populated rural area it wishes to annex will provide room for *372 housing, despite uncontradicted evidence that the best use would be industrial.
The appeal by the city is from the judgment of the Appellate Division unanimously rejecting the proposed annexation as not in the over-all public interest, the only standard referred to in the applicable statute and constitutional provision (32 A D 2d 152; N. Y. Const., art. IX, § 1, subd. [d]; General Municipal Law, § 712). In doing so, the court overruled the reports of its three Referees designated by it under the statute to hold hearings, take evidence, and report. Two of the Referees had reported in favor of the annexation, and one had reported in its favor only conditionally. The Referees, as required by statute, were Justices of the Supreme Court.
A threshold question is the scope of review in this court. It would appear to be narrow indeed, and confined to errors of law.
The power to effect an annexation is largely a matter controlled by statute and constitutional provisions, when there are constitutional provisions. (E.g., City of New York v. Village of Lawrence, 250 N. Y. 429, 437, 440, 444; cf. Ann., Municipal Boundaries — Power to Extend, 64 A. L. R. 1336, 1341-1344, 1346-1350, 1352-1355, 1373-1380.)
The Constitution provides: “No local government or any part of the territory thereof shall be annexed to another until the people, if any, of the territory proposed to be annexed shall have consented thereto by majority vote on a referendum and until the governing board of each local government, the area of which is affected, shall have consented thereto upon the basis of a determination that the annexation is in the over-all public interest. The consent of the governing board of a county shall be required only where a boundary of the county is affected. On or before July first," nineteen hundred sixty-four, the legislature shall provide, where such consent of a governing board is not granted, for adjudication and determination, on the law and the facts, in a proceeding initiated in the supreme court, of the issue of whether the annexation is in the over-all public interest.” (N. Y. Const., art. IX, § 1, subd. [d].) The scheme, it will be noted, for judicial intervention arises only in the event the affected municipalities cannot agree and then the determination is to be made in the Supreme Court on the law and the facts.
*373 The Legislature, in implementing the constitutional direction, enacted article 17 of the General Municipal Law. Indeed, both the statute and the constitutional provision, added as an amendment, were adopted at the same time in 1963, the statute’s operation being conditioned on popular approval of the constitutional amendment. Pursuant to the Constitution, section 712 of article 17 reposes in the appropriate Appellate Division the responsibility for adjudication and determination, on the law and facts, of the issue of whether the proposed annexation is in the over-all public interest (subd. 1). The court is required to designate three Referees who shall be Justices or retired Justices of the Supreme Court to hear and report to the court (subd. 6). Upon receipt of the report, the Appellate Division shall: ‘‘after hearing oral argument on the report of the referees, make its own adjudication and determination, on the law and the facts, on all questions presented to the referees and substitute its judgment for that of any of the governing boards of the local governments as made in their respective determinations and enter its judgment on the issue of whether the annexation is in the over-all public interest ” (subd. 10).
The operative language is that the Appellate Division is to make its own adjudication and determination, on the law and the facts, and substitute its judgment for that of the several local governing boards. Such plain language unequivocally places the responsibility of determination on the Appellate Division. The locus of responsibility is all the clearer when it is recognized that the Appellate Division is not engaged in reviewing a judicial or quasi-judicial dispute but exercising an original responsibility in a governmental policy determination between contending local governments. On this view the ordinary tests applicable to review of judicial or quasi-judicial determinations are not relevant. Much closer are categories of review in this court which bring up only questions of law and also test, therefore, the arbitrariness and capriciousness of the determinations to be reviewed (cf. Matter of Lakeland Water Dist. v. Onondaga County Water Auth., 24 N Y 2d 400, 408; Cohen and Karger, Powers of the New York Court of Appeals, § 108, pp. 452-453; 1 N. Y. Jur., Administrative Law, § 176, [at p. 589], §§ 183-184).
Consequently, so long as the Appellate Division acted pursuant to law its judgment may not be overturned. Any issues *374 resolved by it remain invulnerable if there was any rational basis for its findings and conclusions.
Passing from the threshold question to the merits, an affirmance is indicated. The city does not raise any substantial issue of law. It disputes certain facts, disagrees with various predictions of fact, and emphatically quarrels with the evaluation of the over-all public interest.
At the hearings before the Referees the city presented evidence that annexation would cause its property tax rate to increase by 9 cents on every $1,000 of assessed valuation, that Halfmoon’s tax rate would increase by $1.02, and that the annexed area’s rate would increase by $70. The city’s Mayor testified, based on the history of two areas adjacent to Mechanic-ville, that the extension of city water and sewerage lines to the area to be annexed would be likely to cause rapid residential development. This conclusion was disputed by an expert for the town who stated that builders of residential subdivisions would find the area unattractive and that the area’s highest use was industrial. There was also testimony that residents of the area used some city services and facilities. There was conflicting testimony on the present and future adequacy of water, sewerage, fire, and police services in the area.
The reports of the Referees and the opinion in the Appellate Division plainly considered all of the above factors, albeit they came to different conclusions in assessing the desirability of the proposed annexation. The financial impacts and the provision of services in the city, the town, and the annexed area, as they would be after annexation, were carefully noted and weighed (see 32 A D 2d 152, esp. 154-156, supra). Little was said, if, at all, it is true, about any regional or State benefit which might accrue beyond the immediately affected municipalities ; and although the point is barely made by the city in this court, there was neither below nor here any significant effort at showing such regional or State benefit or effect.
The Appellate Division in reaching its conclusions stated:
“ Considering all of the factors involved, it can hardly be said that any appreciable benefits will inure to the area sought to be annexed by annexation thereof to the city. It thus appears that if any benefit is to be derived by annexation, it will inure only to the City of Mechanicville, and the only benefit to be *375 derived is an area for expansion and an increase in its tax base.
‘ ‘ The report of the majority of the Referees indicates that survival of the city is an overriding consideration in their determination. Certainly annexation is intended as a means for a city to react to changing conditions, but not to aid a city at the expense of another area. Here, the petitioner did not even indicate why it needed an area twice its size in order to survive. Perhaps annexation should be approved when it is in the interest of the petitioner and neither of the other areas involved will be significantly injured. However, where there will be injury to one, and substantial tax cost to the other, benefit to the city should not be permitted at their expense.
‘‘Annexation cannot be considered as being in the over-all public interest where the only benefit to be derived is expansion room for the municipality seeking annexation while the annexed area and the area out of which it is to be carved, will be adversely affected. Here the burden was on the City of Mechanicville to establish that annexation would be in the over-all public interest and in our opinion the city has not met that burden.” (32 A D 2d, at p. 156.)
The factors considered and the evaluation made were not unreasonable by any test of rationality. (For interesting collections of cases in New York and elsewhere in which the large variety of considerations and limitations influencing a determination as to the rightness of a proposed annexation, see Ann., Municipal Boundaries — Alteration — Grounds, 62 A. L. R. 1011, esp. subtitle Prosperity of City, pp. 1023-1024; 64 A. L. R. 1336, 1355-1384, supra.)
Since it was the Appellate Division’s province to assess the several factors no reviewable error is suggested merely because the city believes that the facts would support a contrary judgment. While the statute does not appear to preclude a consideration of regional or State benefit or effect, no such consideration is mandated, nor should it be when the parties have offered only the barest conclusions on this aspect of the annexation. Indeed, most annexation cases thus far have not involved larger regional or State issues (cf. Matter of City of Saratoga Springs v. Town of Greenfield, 34 A D 2d 364; Matter of Common Council of City of Middletown v. Town Bd. of Town of Wallkill, 29 A D 2d 561; Matter of Common Council of City of Albany v. Town Bd. of *376 Town of Bethlehem, 26 A D 2d 230, affd. 19 N Y 2d 646, remmittitur amd. 19 N Y 2d 835). Occasionally, somewhat larger issues have been involved, but still tied for the mosUpart to the immediate localities affected or to local governments superimposed in part on the same territories, such as counties (City of Middletown v. Town of Wallkill, supra; Matter of Common Council of City of Glens Falls v. Town Bd. of Town of Queensbury, 30 A D 2d 577).
It thus appears that the determination by the Appellate Division was in accord with the requirements of the Constitution, the applicable statutes, and such precedents as have arisen. Its action was not arbitrary or in violation of any rule of law or procedure laid down, and its findings and conclusions are not further reviewable in this court.
In so viewing the matter it is not necessary to conclude and it is not concluded that the over-all public interest as that term is used in the Constitution and the statute is confined to the financial impacts upon and public services rendered in the affected municipalities. Undoubtedly, in a proper case, the effect on the larger region or even the State may be relevant, including, perhaps, considerations which go beyond the economic and financial. In this case, however, no such effects were developed or even argued.
Accordingly, the judgment of the Appellate Division should be affirmed.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan and Jasen concur; Judge Gibson taking no part.
Judgment affirmed, without costs.