AGNES M. ROBERTSON, Appellant, v. GEORGE J. ZIMMER-MANN, as Mayor of the City of Buffalo, Respondent.

(Argued April 29, 1935; decided May 28, 1935.)

*Howard R. Sturtevant* and *Mark N. Turner* for appellant. The act creating the Buffalo Sewer Authority violates the provisions of section 10 of· article 8 of the State Constitution in that it attempts by indirection to permit

the bonded indebtedness of the properties of the city of Buffalo to exceed ten per cent of the assessed valuation thereof. (*Newell v. People ex rel. Phelps,* 7 N. Y. 9; *Kenwell v. Lee,* 261 N. Y. 113; *People ex rel. Town of Pelham v. Village of Pelham,* 215 N. Y. 374.) The statute is in direct violation of section 6 of article 1 of the State Constitution and of the Fourteenth Amendment to the Constitution of the United States, in that it deprives the city of Buffalo of its property without due process of law and without just compensation. (*People ex rel. Rodgers v. Coler,* 166 N. Y. 1; *People ex rel. Yost v. Becker,* 203 N. Y. 201.) The statute is unconstitutional for the reason that it violates section 2 of article 12 of the State Constitution. (*Matter of Mayor of New York [Elm St.],* 246 N. Y. 72; *City of New York v. Village of Lawrence,* 250 N. Y. 429; *Browne v. City of New York,* 241 N. Y. 96.) The city of Buffalo is deprived of the privilege of referendum as provided by section 412 of the city charter. (Local Law, No. 4, 1927; Local Laws, 1932, p. 21.)

*Gregory U. Harmon, Corporation Counsel (Fred C. Maloney* and *Elmer S. Stengel* of counsel), for respondent. Chapter 349 of the Laws of 1935 was not adopted in contravention of the provisions of section 2 of article 12 of the State Constitution. (*Browne v. City of New York,* 241 N. Y. 96; *Admiral Realty Co. v. City of New York,* 206 N. Y. 110; *Matter of McAneny,* 232 N. Y. 377; *Tenement House Department v. Moeschen,* 179 N. Y. 325; 203 U. S. 583; *Health Department v. Rector of Trinity Church,* 145 N. Y. 32; *People ex rel. Unger v. Kennedy,* 207 N. Y. 533; *McGrath v. Grout,* 171 N. Y. 7; *Adler v. Deegan,* 251 N. Y. 467; *City of New York v. Village of Lawrence,* 250 N. Y. 429; *Metropolitan Board of Health v. Heister,* 37 N. Y. 661.) The act does not affect the property, affairs or government of the city of Buffalo. (*People ex rel. Simon v. Bradley,* 207 N. Y. 592; *Matter of Bergdorf,* 206 N. Y. 309; *People ex rel. Central Trust Co. v. Prender-*

*gast,* 202 N. Y. 188; *People* v. *Tweed,* 63 N. Y. 202; *People ex rel. McLean* v. *Flagg,* 46 N. Y. 401; *City of Worcester* v. *Worcester Con. St. Ry. Co.,* 196 U. S. 539; *City of Pawhuska* v. *Pawhuska Oil & Gas Co.,* 250 U. S. 394; *MacMullen* v. *City of Middletown,* 187 N. Y. 37.) The provisions of the act do not contravene the Fourteenth Amendment to the Federal Constitution or section 6 of article 1 of the State Constitution. (*City of New York* v. *Village of Lawrence,* 250 N. Y. 429; *Darlington* v. *City of New York,* 31 N. Y. 164; *People* v. *Morris,* 13 Wend. 322; *Proprietors of Mt. Hope Cemetery* v. *City of Boston,* 158 Mass. 509; *Meriwether* v. *Garrett,* 102 U. S. 472; *City of Trenton* v. *State of New Jersey,* 262 U. S. 182; *Hunter* v. *Pittsburgh,* 207 U. S. 161; *Carson* v. *Brockton Sewerage Comm.,* 182 U. S. 398; *Dunbar* v. *City of New York,* 251 U. S. 516; *Valley Farms Co.* v. *County of Westchester,* 261 U. S. 155; *Matter of Bronx Parkway Comm.* v. *Hylan,* 119 Misc. Rep. 785; 206 App. Div. 688; 236 N. Y. 593.) The issuance of obligations by the Authority will not be in contravention of section 10 of article 8 of the State Constitution. (*People* v. *Draper,* 15 N. Y. 528; *Metropolitan Board of Health* v. *Heister,* 37 N. Y. 661; *Matter of McAneny,* 198 App. Div. 205; 232 N. Y. 377; *Matter of Bronx Parkway Comm.* v. *Hylan,* 119 Misc. Rep. 785; 236 N. Y. 593; *Smith* v. *Havens Relief Fund Society,* 44 Misc. Rep. 594; 190 N. Y. 557; *People ex rel. Simon* v. *Bradley,* 207 N. Y. 592; *Adams* v. *E. R. S. Institution,* 136 N. Y. 52; *Levy* v. *McClellan,* 196 N. Y. 178; *People ex rel. McLean* v. *Flagg,* 46 N. Y. 401.) No constitutional guaranty of the privilege of a referendum has been violated. (City Home Rule Law, § 21, subd. 2; Cons. Laws, ch. 76; Laws of 1933, ch. 782.)

*Charles B. Lauren* and *Arnold Frye* for E. J. Dimock, *amicus curiæ.* The Legislature had the constitutional power to create the Buffalo Sewer Authority. (*Matter of Thirty-fourth St. R. R. Co.,* 102 N. Y. 343; *People ex rel.*

*Simon* v. *Bradley*, 207 N. Y. 592; *People ex rel. McLean* v. *Flagg*, 46 N. Y. 401; *People* v. *Tweed*, 63 N. Y. 202; *People ex rel. Morrill* v. *Supervisors*, 112 N. Y. 585; *Matter of McAneny*, 232 N. Y. 377; *Astor* v. *Mayor of New York*, 62 N. Y. 567; *Matter of Bronx Parkway Comm.* v. *Hylan*, 119 Misc. Rep. 785; 206 App. Div. 688; 236 N. Y. 593; *People ex rel. Bd. of Commrs.* v. *Supervisors of Oneida County*, 170 N. Y. 105; *People ex rel. Wood* v. *Draper*, 15 N. Y. 532.) The city of Buffalo will not become indebted within the meaning of section 10 of article 8 of the State Constitution by the issuance of bonds by the Buffalo Sewer Authority pursuant to chapter 349 of the Laws of 1935. (*Tranter* v. *Allegheny County Authority*, 316 Penn. St. 65; *Shelton* v. *City of Los Angeles*, 206 Cal. 544; *Department of Water & Power* v. *Vroman*, 218 Cal. 206; *California Toll Bridge Authority* v. *Wentworth*, 212 Cal. 298; *California Toll Bridge Authority* v. *Kelly*, 218 Cal. 7; *State* v. *Regents of University of New Mexico*, 32 N. M. 428; *State ex rel. Kaufman* v. *Davis*, 59 N. D. 191; *Fanning* v. *University of Minnesota*, 183 Minn. 222; *Baker* v. *Carter*, 165 Okla. 116; *Caldwell Bros.* v. *Board of Supervisors*, 176 La. 825; *State* v. *Regents of University System of Georgia*, 175 S. E. Rep. 567; *Board of Regents of University of Arizona* v. *Sullivan*, 42 Pac. Rep. [2d] 619; *Silkman* v. *Board of Water Commrs.*, 152 N. Y. 327; *New York University* v. *American Book Co.*, 197 N. Y. 294; *Kleinstein* v. *Gonsky*, 134 App. Div. 266.)

HUBBS, J. This is a taxpayer's action to secure a permanent injunction restraining the Mayor of the city of Buffalo from appointing a Board to be known as " Buffalo Sewer Authority " and from taking any other action pursuant to chapter 349 of the Laws of 1935 upon the ground that the act is unconstitutional.

The act in question creates a body corporate, to be known as " Buffalo Sewer Authority," composed of five members, all residents of the city of Buffalo, to be appointed for specified terms by the Mayor of the city,

subject to confirmation by the Common Council. Its corporate existence is limited to five years, " and thereafter until all its liabilities have been met and its bonds have been paid in full or such liabilities or bonds have otherwise been discharged." Upon the expiration of its corporate existence all its rights and properties are to pass to the city of Buffalo. It is given complete jurisdiction, control, possession and supervision of the existing sewer system and all facilities for disposal of storm water and sewage of the city of Buffalo, authority to construct such additional sewers, disposal or treatment plants and other appliances and structures as will in its judgment " provide an effectual and advantageous means for relieving the Niagara river, Buffalo river and Lake Erie from pollution by the sewage and waste of the city," and upon completion of the project to establish sewer rents to be collected from all real property served by its facilities. Such sewer rents are to constitute a lien upon the real property served, to have the same priority and superiority as the lien of the general tax of the city, which lien may be foreclosed by action in the same manner as a tax lien. It is given authority to issue bonds which are not to constitute a debt of the State or of the city but are to be payable only from funds of the sewer authority.

The enactment of chapter 349 of the Laws of 1935 is a result of an order of the State Commissioner of Health made on or about March 22, 1935, after a public hearing directing the city of Buffalo to proceed with necessary sewage and sewage disposal plant construction to eliminate sewage pollution contributed by the city to Niagara river and Lake Erie. The Common Council of the city favored its enactment for the reason, as stated in a resolution adopted by that body, that " the city because of its constitutional debt limitation cannot finance this undertaking by bond issue."

Laws of 1935, chapter 349, section 8, subdivision 1, reads in part:

" 1. It is hereby found and declared that the creation of the authority and the carrying out of its corporate purposes is in all respects for the benefit of the people of the state of New York, for the improvement of their health and welfare, and is a public purpose, and the authority shall be regarded as performing a governmental function in the exercise of the powers conferred upon it by this act."

The Special Term granted a temporary injunction pending a hearing upon a motion for judgment on the pleadings and upon return of the motion granted judgment dismissing the complaint. The appeal is taken directly to this court pursuant to subdivision 3 of section 588 of the Civil Practice Act.

It is contended that the act, by transferring to the jurisdiction and control of the Sewer Authority the existing sewer system of the city, violates section 2 of article XII of the State Constitution, being part of the Home Rule Amendment, so called, which reads as follows:

" § 2. The legislature shall not pass any law relating to the property, affairs or government of cities, which shall be special or local either in its terms or in its effect, but shall act in relation to the property, affairs or government of any city only by general laws which shall in terms and in effect apply alike to all cities except on message from the governor declaring that an emergency exists and the concurrent action of two-thirds of the members of each house of the legislature."

· The act was not passed as an emergency measure by the concurrent action of two-thirds of each house of the Legislature or on a message from the Governor.

The question presented is whether the act relates " to the property, affairs or government " of the city and is special or local either in its terms or effect.

It is immediately apparent that the prime purpose of the Legislature in enacting the law was not to deprive the city of any of its powers or prerogatives under the

Home Rule Amendment but rather to afford a means of carrying out the order of the State Commissioner of Health which order was designed to eliminate a serious menace to the health of the people of the State generally and particularly the communities, including the city of Buffalo, which are obtaining their water supply from the waters polluted by untreated sewage from the city of Buffalo. The record indicates that this pollution has affected water supplies taken from Lake Erie, the Niagara river and Lake Ontario.

In *Matter of Mayor of City of New York* (*Elm Street*) (246 N. Y. 72, 76) this court pointed out the effect of the Home Rule Amendment upon the previously established test as to whether a law was on the one hand special or local or on the other hand general. We there said: " We are no longer confined to the inquiry whether an act is general or local ' in its terms.' We must go farther and inquire whether it is general or local ' in its effect.' " That case well illustrates the type of legislation held to be local in effect, that is, an act which though general in its terms has the result of affecting only a single municipality. An act designed to remedy conditions affecting the public generally, though imposing restrictions or obligations upon a particular municipality as a means of affecting the larger purpose can hardly be said to be local in its effect. Not every act so burdening or limiting a municipality is local in its effect. (*Adler* v. *Deegan*, 251 N. Y. 467.)

Speaking of the Home Rule Amendment in *City of New York* v. *Village of Lawrence* (250 N. Y. 429, 435) we said: " Enlargement of legislative powers by the city in relation to their ' property, affairs or government ' is balanced by restriction of the powers of the Legislature within the same field. In relation to such matters the Legislature may not pass any law which is ' special or local, either in its terms or in its effect,' except on message from the Governor declaring that an emergency exists."

While the act here in question as an incident of its plan for the elimination of pollution of Niagara river, Buffalo river and Lake Erie by sewage of the city of Buffalo necessarily by its terms refers frequently to that city, its officers and its existing sewage system and as a further incident thereof provides for a temporary transfer to the Sewer Authority of control of such sewage system, its effect is more than local and its primary purpose is not to protect the city and its inhabitants only, but also those other communities using water affected by the pollution as well as the public generally. While the act does, in the interest of the public, interfere with the control by the city of Buffalo of its sewage system and to that extent does relate to the property of the city, it cannot be held to be special or local either by its terms or effect.

As stated in *City of New York* v. *Village of Lawrence* (*supra*), we have yet " found no case where the words ' relating to the property, affairs or government of cities ' have been held to include legislation which does not deal directly with the internal affairs of a city or the functions of its officers " (p. 443).

The principle involved is not different from that discussed in *Adler* v. *Deegan* (*supra*, pp. 476, 481, 491). We there had under consideration the Multiple Dwelling Act, dealing with the conditions under which tenements shall be constructed with reference to light, air, fire protection, etc. We there said: " The protection of the public health and safety is one of the acknowledged purposes of the police power of the State * * *. The provision is for the benefit of all who have occasion to use the dwelling and not for the city of New York and its inhabitants alone * * *. The fact is that the State Legislature, in drafting those provisions which subsequently, by the vote of the people, became the Home Rule measure in the Constitution knew and realized that the words, ' property, affairs or government of cities,' did not include

health measures * * *. The test is rather this, that if the subject be in a substantial degree a matter of state concern, the Legislature may act, though intermingled with it are concerns of the locality."

It is true as urged by appellants, that the Multiple Dwelling Act (Cons. Laws, ch. 61-A) did not take from the city the control of any city property, but it did take from the city, by the imposition of certain requirements, the establishment of building regulations contrary to those requirements and was thereby a positive interference with the exercise of powers otherwise granted by the Home Rule Amendment. We so recognized when we said in *Adler* v. *Deegan (supra)*: " The power was subject in its creation to the overriding action of the State " (p. 488).

In this instance that over-riding action takes from the city temporarily its control of its sewer system and for a like period estops the city or any other corporation or agency from the construction, operation or maintenance of any sewage system within the city but only for the protection of the public from a serious menace which requires the exercise by the State of its sovereign police power. As said in *Adler* v. *Deegan (supra)*: " The police power of the State has never been questioned when it dealt directly with hygienic conditions of a community. Unless the intent is clear or reasonably certain it should not now be limited or whittled away by the reform known as Home Rule for cities " (p. 478).

Like the Rapid Transit Act, discussed in *Admiral Realty Co.* v. *City of New York* (206 N. Y. 110) and the Public Service Commission Law under consideration in *Matter of McAneny* v. *Board of Estimate and Apportionment* (232 N. Y. 377), which dealt with railroads in the city of New York, this act, dealing with sewage of the city of Buffalo, is a matter of public interest affecting the whole State. It may be noted that in *Admiral Realty Co.* v. *City of New York (supra)*, existing subways owned by the city were to be operated for a term of years in connection with new subways to be constructed.

It is urged also that the act here in question violates the provisions of article VIII, section 10, of the Constitution of the State in that it attempts by indirection to permit the bonded indebtedness of the properties of the city of Buffalo to exceed ten per cent of the assessed valuation thereof.

Article VIII, section 10, provides as follows: " No county or city shall be allowed to become indebted for any purpose or in any manner to an amount which, including existing indebtedness, shall exceed ten per centum of the assessed valuation of the real estate of such county or city subject to taxation * * * and all indebtedness in excess of such limitation, except such as now may exist, shall be absolutely void."

There is here no question as to the bonded indebtedness of the " properties " of the city. If, by any construction, the effect of the act would be to increase the bonded indebtedness of the city beyond the debt limit, a question might be presented requiring our consideration. The act, by section 6 thereof, specifies that the bonds and other obligations of the Authority shall not be a debt of the State or the city and makes them payable only out of funds of the Authority. Those funds the Authority must obtain, if at all, through loans, bond issues and sewer rents to be collected as hereinbefore mentioned. Bonds issued by the Sewer Authority are not protected by a lien upon the lands or properties either of the existing sewer system or upon the lands and properties to be acquired. The sewer rents provide the only means of payment.

It is true that the sewer rents are to be derived from owners of property using the new system, but it must be borne in mind that there is not involved the diversion of any existing source of revenue of the city. The sewer rents may only be collected upon completion of the new project, a project which will be a substitute for a system resulting in contamination of water supplies over a large area, including the city of Buffalo itself. The project

will confer a benefit not now enjoyed upon the property to be subjected to the rentals.

The project constitutes a self-liquidating public improvement. The Authority cannot pledge the credit of the city in any way and its bonds are to be paid solely from the revenues of the " Authority." The act does not offend the provision of the Constitution referred to. (*Tranter* v. *Allegheny County Authority*, 316 Penn. St. 65; *Department of Water & Power of City of Los Angeles* v. *Vroman*, 218 Cal. 206; *Fanning* v. *University of Minnesota*, 183 Minn. 222; 6 McQuillan on The Law of Municipal Corporations, § 2388.)

It is further contended that the statute is in violation of section 6 of article 1 of the State Constitution and of the Fourteenth Amendment of the Constitution of the United States, in that it deprives the city of its property without due process of law and without just compensation.

The act provides for no transfer of title of any property of the city. As was said in *Darlington* v. *Mayor of City of New York* (31 N. Y. 164, 193): " In cities, for reasons partly technical, and in part founded upon motives of convenience, the title is vested in the corporate body. It is not thereby shielded from the control of the Legislature, as the supreme law-making power of the State."

The Legislature here has transferred control of the existing sewage system for a limited period to another agency of the government but only to be used " for similar purposes, or perhaps for another purpose, strictly public in their character."

" Over property which a city or town has acquired and holds exclusively for purposes deemed strictly public, that is, which the city or town holds merely as an agency of the State government for the performance of the strictly public duties devolved upon it, the Legislature may exercise a control to the extent of requiring the city or town, without receiving compensation therefor, to transfer such property to some other agency of the govern-

64

ment appointed to perform similar duties, and to be used for similar purposes, or perhaps for other purposes strictly public in their character." (*Proprietors of Mt. Hope Cemetery* v. *City of Boston*, 158 Mass. 509.)

The power of the State unrestrained by the Fourteenth Amendment to the Federal Constitution over the rights and property of cities is not open to question. (*City of Trenton* v. *State of New Jersey*, 262 U. S. 182; *Hunter* v. *Pittsburgh*, 207 U. S. 161.)

The act provides that the Authority is permitted to charge only on a basis of service rendered. Charges based upon services rendered by an authority do not constitute a tax, and the fact that a lien for unpaid charges is permitted against the property served does not affect the validity of the act. (*Silkman* v. *Board of Water Commissioners*, 152 N. Y. 327; *New York University* v. *American Book Co.*, 197 N. Y. 294.)

Finally it is urged that the city of Buffalo is deprived of the privilege of referendum as provided by section 412 of the city charter (Local Law, No. 4, 1927; Local Laws, 1932, p. 21). That provision has reference only to a city debt. Since here no debt of the city is or may be involved the charter provision has no application.

While the act in question does have the effect of transferring for a period of time the sewer system of the city from immediate control of its Common Council, the Legislature has left with the Council control over appointments to be made to the Sewer Authority which is to assume control. The members of the Board constituting that Authority must be residents of the city. The funds of the Authority are to be deposited with the City Treasurer as agent of that Authority and can only be paid out on warrant of the Comptroller as agent of the Authority and the Comptroller is vested with power to examine the books of the Authority. These and other provisions of the act insure against material detriment to the city and its citizens as a result of the transfer of

control of the system. Most serious is the necessity for the imposition of sewer rents to provide for payment of the cost of the improvements to be made. Those improvements are necessary because the city has created a menace which must be eliminated if the public health and welfare of the people of the State are to be protected, and the users of the system, who will be benefited thereby, must provide the cost of the improvements. Since the city cannot itself meet the requirements of the situation, the only alternative is for the State, in the exercise of its police power, to provide a method of constructing the improvements and of financing their cost. The statute in question affords an equitable and proper method of accomplishing such a result.

The judgment should be affirmed, with costs.

CRANE, Ch. J., CROUCH, LOUGHRAN and FINCH, JJ., concur with HUBBS, J.; LEHMAN, J., concurs in the opinion since *Adler* v. *Deegan* (251 N. Y. 467) has settled the law of this State; O'BRIEN, J., concurs in the result on the authority of *Adler* v. *Deegan* (251 N. Y. 467).

Judgment affirmed.