WILLIAM P. FISHER et al., Constituting the Common Council of the City of Buffalo, Respondents, v. JOSEPH J. KELLY, as Mayor of the City of Buffalo, Appellant.

Argued July 29, 1942; decided October 16, 1942.

*Andrew P. Ronan, Corporation Counsel (Elmer S. Stengel of counsel), for appellant.* It was error for the Appellate Division to determine that the provisions of Local Law No. 1 of 1942 did not conflict with the provisions of the Public Health Law. (Cons. Laws, ch. 45; *People ex rel. Bush v. Houghton,* 182 N. Y. 301; *Adler v. Deegan,* 251 N. Y. 467.) The Common Council had no authority to adopt Local Law No. 1, 1942, under the provisions of subdivision 1 of section 11 of the City Home Rule Law. (Cons. Laws, ch. 76; *Adler v. Deegan,* 251 N. Y. 467; *Robertson v. Zimmermann,* 268 N. Y. 52; *County Securities, Inc., v. Seacord,* 278 N. Y. 34.) The Public Health Law applies to the city of Buffalo. (Laws 1914, ch. 217; Cons. Laws, ch. 76, § 20, subd. 3; Cons. Laws, ch. 45, § 20.) Section 20 of the Public Health Law requires a board of two or more members. (*People ex rel. Barmore v. Robertson,* 302 Ill. 422; *Matter of Dobson,* 146 N. Y. 357; *Matter of Bronson,* 150 N. Y. 1.) The Local Law, if valid, is subject to a mandatory referendum. (Cons. Laws, ch. 76, § 15, subd. 5; *Matter of Heeran v. Scully,* 135 Misc. Rep. 874; 254 N. Y. 344.)

*Philip Halpern* and *George Clinton, Jr.,* for respondents. The Public Health Law does not govern the organization of departments of health in cities of the first or second class, having a population of over 50,000. The organization of the Department of Health of the city of Buffalo has never been governed by the provisions of section 20 of the Public Health Law. (Cons. Laws, ch. 53, § 145; Cons. Laws, ch. 45, § 20; *Ponsrok v. City of Yonkers,* 254 N. Y. 91.) There is no provision of any state statute, applicable to the city of Buffalo, which requires that the health department be headed by a board of two or more persons rather than by a single officer. (*Strickland v. Harger,* 16 Hun, 465; *McCormick & Co. v. Brown,* 52 Fed. Rep. [2d] 934; *Wohlgemuth Bus Co. v. Public Service Co-ordinated Transport,* 125 N. J. L. 232; *Broadhurst v. City of Falls River,* 278 Mass. 167; *Milovich v. City of Los Angeles,* 42 Cal. App. [2d] 364; *Commonwealth v. Wilson Co.,* 241

Mass. 406.) The provision of the Public Health Law with which the local law is assumed to be in conflict, does not in terms and in effect apply alike to all cities. (*Bareham* v. *City of Rochester*, 246 N. Y. 140; *New York Steam Corp.* v. *City of New York*, 268 N. Y. 137; *Johnson* v. *Etkin*, 279 N. Y. 1.) The local law reorganizing the health department of the city of Buffalo relates to the property, affairs or government of the city. The city therefore had the power to supersede the provision of the State law with which the local law is assumed to be in conflict, under subdivision 1 (a) of section 11 of the City Home Rule Law. (*City of New York* v. *Village of Lawrence*, 250 N. Y. 429; *Metzger* v. *Swift*, 258 N. Y. 440; *People ex rel. Bush* v. *Houghton*, 182 Y. Y. 301; *People ex rel. Werner* v. *Prendergast*, 206 N. Y. 405; *Matter of Towne* v. *Porter*, 128 App. Div. 717; *People ex rel. Lynch* v. *Pierce*, 149 App. Div. 286; *New Rochelle Trust Co.* v. *White*, 283 N. Y. 223; *Commission of Public Charities* v. *Wortman*, 279 N. Y. 711; *Matter of Osborn* v. *Cohen*, 272 N. Y. 55; *People ex rel. New York, New Haven & Hartford R. R. Co.* v. *Willcox*, 200 N. Y. 423; *People ex rel. Yonofsky* v. *Blanchard*, 288 N. Y. 145.) In any event, the local law is valid under part (b) of subdivision 1 of section 11 of the City Home Rule Law of 1939, authorizing cities to adopt local laws in relation to the qualifications, number, mode of selection or removal, terms of office and compensation of all its officers and employees whether such local laws relate to the property, affairs or government of such city or not. (*New Rochelle Trust Co.* v. *White*, 283 N. Y. 223.)

LEHMAN, Ch. J. In 1927 the city of Buffalo, in the exercise of powers conferred by the City Home Rule Law (Cons. Laws, ch. 76), adopted, by local law (Local Law No. 4, 1927, pub. in Local Laws, 1932, p. 21), a City Charter superseding its charter which had been enacted by the Legislature (L. 1914, ch. 217.) Article XIV of the new Charter defined the powers of the Department of Health and the powers, duties, qualifications, number, mode of selection and removal, terms of office, etcetera, of the officers and employees of the Department. The Common Council of the city in March, 1942, adopted a local law which purported to " supersede and repeal " that article and to " substitute in place thereof a new article XIV."

Article XIV of the Charter of 1927, provided that the Board of Health " shall be the head of the department of health." (§ 270). The members of the Board of Health were to be appointed by the Mayor of the city, subject to confirmation by the Council, and were " removable at any time by the mayor." (§ 271). The members of the Board did not, individually, have any executive powers and duties. The Charter provided that " the board shall appoint and may at pleasure remove a health commissioner " and that: " The health commissioner shall be the chief executive officer of the board and shall, subject to its direction, have supervision and management of the affairs of the department and of its employees and of enforcing the local laws and ordinances of the city respecting health and the order, rules and regulations of the board and the provisions of the public health law and sanitary code of the state applicable to the city." (§§ 275, 276).

In article XIV of the Charter, as amended by the local law adopted by the Council in 1942, a " commissioner of health," appointed by the Mayor, subject to confirmation by the Council, and removable at any time by the Mayor, is substituted for the Board of Health as the head of the Department of Health. His duties are almost identical with the duties of the Board of Health as defined in the Charter of 1927. " The commissioner of health shall exercise all the powers and be charged with all the duties now or hereafter conferred upon or required of local boards of health or local health officers by the laws of this state so far as the same pertain to cities, except, as limited or extended by the provisions of this act. The commissioner of health shall also possess such powers and perform such duties as may be prescribed by ordinance of the common council, by this local law or otherwise by law."

The article as amended not only confers upon the Commissioner of Health the powers and duties previously exercised by the Board of Health but it abolishes that Board as previously constituted. It does, however, provide for an " advisory board " to be appointed by the Mayor for fixed terms, which is charged with the duty to " advise the commissioner of health or the mayor upon matters pertaining to public health whenever requested by such commissioner of health or mayor." In other respects the provisions of the new article XIV are similar to the provisions of the superseded

article — or, at least, the differences are not material to any question presented upon this appeal.

The Mayor of the city has declined to appoint a Commissioner of Health and to submit his name to the Common Council for confirmation, in accordance with the provisions of the Local Law of March, 1942, contending that the " said local law is invalid, nugatory and void and beyond the power of the Common Council to enact " and further that " even if said local law be declared valid, it is not in effect until approved by the electors of the City of Buffalo after a referendum as required by section 15 of the City Home Rule Law." The controversy has been submitted to the Appellate Division upon an agreed statement of facts. The court sustained the validity of the local law and held that no approval by the electors after a referendum is required by the City Home Rule Law. One of the justices dissented and voted " for dismissal of the action on the ground that the local law in question is presumptively valid and that the Common Council is without jurisdiction or authority to institute an action to test the validity of said law." (264 App. Div. 596, 599).

The parties are seeking a judicial determination of a controversy which affects the government of the city of Buffalo and the protection of the health of the public. The controversy relates solely to the construction of the City Home Rule Law (L. 1924, ch. 363 as amd. by L. 1939, ch. 867) and of the Public Health Law (Cons. Laws, ch. 45; L. 1909, ch. 49), as thereafter amended. It depends upon no facts other than matters of public record, where there is no room for dispute. In the public interest the question should be authoritatively determined and the controversy speedily ended. We do not pause to consider technical objections which, perhaps, might be urged to the procedure and form in which the question has been presented to the Appellate Division, but proceed, as that court did, to consider the question on the merits.

The " Power of cities to adopt and amend local laws " is defined by section 11 of the City Home Rule Law. Within the field described in subdivision 1 of that section, " such local laws may change or supersede any provision of an act of the legislature theretofore enacted which provision does not in terms and in effect apply alike to all cities." Within the field described in subdivision 2

of section 11, the legislative power of cities is more restricted. There, " such local laws, in so far as they do not relate to the property, affairs or government of the city or to other matters in relation to which the city is authorized by subdivision one to pass local laws, shall not change or supersede any act of the legislature." The challenge by the Mayor of the validity of the local law amending the City Charter is based upon the contention that, since public health is a matter of State concern (*Adler* v. *Deegan*, 251 N. Y. 467; *Robertson* v. *Zimmermann*, 268 N. Y. 52), the local law relates to matters other than those " in relation to which the city is authorized by subdivision one to pass local laws " and that the provision of the local law which substitutes a " commissioner of health " appointed by the Mayor in place of the Board of Health as " head of the department of health " conflicts with provisions of the Public Health Law to which we shall hereafter refer, and exceeds the legislative power of the city as defined in the City Home Rule Law. The Appellate Division found no such conflict. If we agree with this conclusion we need not consider whether or not the local law relates to matters " in relation to which the city is authorized to pass local laws " under subdivision one.

The Public Health Law is a general statute and relates to a matter of State concern but, like other general statutes relating to matters of State concern, not all of its provisions apply alike in all the subdivisions and to all the municipal corporations of the State. Article 3 of the statute and section 20 of that article are both entitled, " Local boards of health." Section 20 provides in part: " *There shall continue to be local boards of health and health officers in the several cities, villages and towns of the state except as hereinafter provided.* In cities under fifty thousand population * * * the board shall consist of the mayor of the city who shall be its president, and six other persons * * *. In the cities, except cities whose charters otherwise provide, the *board shall appoint, for a term of four years, a competent physician, not one of its members * * * to be the health officer of the city, * * *.* In villages the board of health shall consist of the board of trustees of such village. In towns the board of health shall consist of the town board. * * *.*"

Section 21, entitled " General powers and duties of local boards of health," provides in part: " *Every such local board, subject to the provisions of the public health law and of the sanitary code, shall prescribe the duties and powers of the local health officer, who shall be its chief executive officer, and direct him in the performance of his duties, and fix his compensation* * * *.*" (Italics are, of course, ours.)

Literal compliance by a city with all the provisions of the statute which we have italicized is possible only where the City Charter provides for a Board of Health with power to appoint and direct a health officer. Under the challenged local law the city of Buffalo will have no such Board. The problem here presented is whether those provisions of section 20, which require such a Board are intended to apply to the city of Buffalo. We are told by the plaintiffs that the words " boards of health " as used in the Public Health Law should not be construed literally as a description of a body consisting of several persons but rather as a description of any public health authority, whether a body consisting of several persons or a single officer. So construed it is said that the provisions of sections 20 and 21 of the Public Health Law are not changed or superseded by a local law which substitutes as head of the Department of Health of a city, a single officer appointed by the Mayor in place of a Board of Health with power to appoint and direct an executive health officer.

The words " Board of Health " are a descriptive term applicable to an official body consisting of several persons. For many years such an official body, organized in manner prescribed by the Legislature, was the official local health authority in the cities, villages and towns of the State, except where the Legislature in a City Charter provided a special form of organization for the local Health Department. Some cities, including the city of Buffalo, long ago had received charters from the Legislature which provided forms of organization of the Health Department which departed in some respects from the general pattern which the Legislature prescribed for the organization of the other cities of the State. Accordingly, when the Legislature adopted section 270 of the Laws of 1885, it provided in section 1 that: " It shall be the duty of the common council, upon the nomination of the *mayor of every city in this state,*

*except in the cities of New York, Buffalo, Albany and Yonkers and Brooklyn, which are hereby excepted from the operation of this act,* to appoint a board of health for such city," etc. That statute was the forerunner of section 20 of the Public Health Law adopted by the Legislature by chapter 661 of the Laws of 1893, which provided that: " There shall continue to be local boards of health and health officers in the several cities, villages and towns of the state. In the cities except New York, Brooklyn, Buffalo, Albany and Yonkers, the board shall consist of the mayor of the city, who shall be its president, and at least six other persons * * *. The board shall appoint a competent physician, not one of its members, to be the health officer of the city." It appears clear that the first sentence of that section: " There shall continue to be local boards of health and health officers in the several cities, villages and towns of the state," was intended to apply to all the cities of the State, but that Buffalo and the other cities named in the second sentence were excepted from the other provisions of section 20 of the Public Health Law of 1893. The form of that exception was made more general by amendment of the section by chapter 253 of the Laws of 1906. There, the second sentence of the section read, " In the cities, *except cities of the first and second class*, the board shall consist . * * *." With a few changes, to which we shall hereafter refer, the provisions of sections 20 and 21 of the Public Health Law, chapter 45 of the Consolidated Laws (L. 1909, ch. 49 as thereafter amended) are derived from the provisions of the earlier statute.

In the Public Health Law as adopted in 1909 the same form of exception, " except cities of the first and second class," was again used and since Buffalo was a city of the " first class " there could be no possible question about its exclusion from the provisions of sections 20 and 21. Clearly the provisions of those sections, at least after the first sentence of section 20, applied to no cities except those of the third class, *i. e.* cities with a population of under 50,000 inhabitants.

Though in our opinion the first sentence of section 20, that " there shall continue to be local boards of health and health officers in the several cities, villages and towns of the state " is intended to apply to all the cities of the State, including Buffalo,

we agree that it should not be construed as a requirement that in every city, village and town there shall be both a local Board of Health and a health officer. A Board of Health with power to appoint a health officer is one form of organization of a Public Health Authority in this State. Under the Second Class Cities law (L. 1906, ch. 473), the charter of all cities of the second class provided a different form of organization. In those cities a " commissioner of public safety " (see § 130) who is " charged with all the duties conferred upon or required of local boards of health by the laws of this state " (see § 145) is head of the Health Department. Other forms of organization are provided also for some cities by special statutes. Section 32 of the General Construction Law (Cons. Laws, ch. 22) provides that " A reference to several officers of a municipal corporation holding the same office, or to a board of such officers, shall be deemed to refer to the single officer holding such office, when but one person is chosen to fill such office in pursuance of law." Reasonably construed the first sentence of section 20 can mean only that local boards of health and local health officers are not abolished by the statute and that in each city, village or town of the State the duties conferred upon or required of local boards of health by the laws of the State shall continue to be performed by a local health officer or board. So construed the local law is not in conflict with the first sentence of section 20 of the Public Health Law.

The form of organization of the Health Department of the City of Buffalo as provided in the local law is, as we have pointed out above, different from the form of organization provided in other portions of sections 20 and 21 of the Public Health Law for those cities which are included in the scope of these provisions. There is here no room for construction concerning the *form* of organization required in those cities which are included within the scope of these statutory provisions. There must be a board of health with power to appoint and direct an executive health officer. The question we must decide is whether or not these provisions apply to any city except cities with a population of under 50,000.

All cities of the first and second class were, as we have pointed out, expressly excluded from the scope of these provisions until 1929. " In the cities, *except cities of the first and second class,* the

board shall consist of the mayor * * * and * * * six other persons * * *. In the cities, *except cities of the first and second class*, and such other cities whose charters otherwise provide, the board shall appoint * * * a competent physician * * *, to be the health officer of the city." In its present form the statute as amended by chapter 376 of the Laws of 1929 provides: " In cities under fifty thousand population * * * the board shall consist of the mayor * * * and six other persons * * *. In the cities, except cities whose charters otherwise provide, the board shall appoint, * * * a competent physician * * * to be the health officer of the city." The change is, it is plain, purely formal. Before the amendment the statute expressly stated that the provision that the Board shall appoint a competent physician to be the health officer of the city did not apply to cities in the first and second class nor to cities whose charters otherwise provide. In other words, it applied only to cities with a population of under 50,000. After the change it applied only to the same group of cities. Indeed, with the exception of the city of Buffalo all cities of larger population than 50,000 have charters which do otherwise provide. The section is misread if the amendment is given a broader and forced significance. The provisions of sections 20 and 21, which prescribe a form of organization of boards of health of cities, confer upon such boards of health specified powers and duties, have no application to the city of Buffalo, and are not changed or superseded by the local law which has been challenged.

Nor does the City Home Rule Law require that the local law be approved by the voters of the city before it becomes effective. A local law which merely changes the form of organization of a department of the city, substituting as head of the department a single officer appointed by the Mayor in place of a board whose members were appointed by the Mayor, does not " abolish, transfer or curtail " any power of the Mayor within the meaning of the City Home Rule Law. (§ 15).

The judgment should be affirmed, without costs.

LOUGHRAN, FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Judgment affirmed.