Town of North Hempstead et al., Appellants, v Incorpo-
rated Village of Westbury et al., Respondents, et al.,
Defendant. (Action No. 1.)

Incorporated Village of Great Neck Plaza, Respondent-
Appellant, v Town of North Hempstead et al., Appel-
lants-Respondents. (Action No. 2.)

Second Department, August 17, 1992

**APPEARANCES OF COUNSEL**

*Winston & Strawn,* New York *(Joseph DiBenedetto* of counsel), and *Ivan Kline, Town Attorney,* Manhasset, for appellants in Action No. 1 and appellants-respondents in Action No. 2 (One brief filed.)

*Spellman & Walsh,* Garden City *(John M. Spellman, John*

*P. Gibbons, Jr.,* and *Kevin M. Walsh* of counsel), for Incorporated Village of Mineola, respondent.

*Jerome F. Matedero, Village Attorney,* Westbury, and *Fulbright & Jaworski,* New York *(Lawrence W. Boes, Edward Dolido* and *Bruce H. Charnov* of counsel), for Incorporated Village of Westbury, respondent. (One brief filed.)

*Meltzer, Lippe, Goldstein, Wolf, Schlissel & Sazer, P. C.,* Mineola *(Richard A. Lippe* and *Stephen A. Mendelsohn* of counsel), for respondent-appellant.

*Robert Abrams, Attorney-General,* New York *(Gordon J. Johnson* and *Peter H. Schiff* of counsel), for State of New York, intervenor.

*Meyer, Suozzi, English & Klein, P. C.,* Mineola *(A. Thomas Levin* of counsel), for Incorporated Village of Baxter Estates and others, *amici curiae.*

*A. Kevin Crawford,* Albany, for Association of Towns of the State of New York, *amicus curiae.*

*Twomey, Latham, Shea & Kelley,* Riverhead *(Stephen B. Latham* and *Maureen T. Liccione* of counsel), for Town of Babylon and others, *amicus curiae.*

*Donna M. C. Giliberto,* Albany, for New York State Conference of Mayors and Municipal Officials, *amicus curiae.*

#### OPINION OF THE COURT

Per Curiam.

These appeals and cross appeal arise from two separate actions. The actions raise similar legal questions and are based on the same statutes and local laws. Since the legislative history of the statutes involved is indispensable to an understanding of the dispute, we initially set forth the relevant history.

### I

In 1983 the New York State Legislature enacted Laws of 1983 (ch 299), requiring, *inter alia,* the closure of virtually all Long Island landfills by December 18, 1990 (ECL 27-0704). Also in 1983, the New York State Legislature enacted Laws of 1983 (ch 544), effective July 20, 1983. The statute provided: "Notwithstanding the provisions of any general, special or local law to the contrary, the town of North Hempstead is

authorized, in order to carry out the purposes of chapter five hundred fifty-two of the laws of nineteen hundred eighty, relating to improving the environment by control of air, water and land pollution, and to promote solid waste management planning and the development of solid waste management programs and facilities, to adopt and amend a local law to be known as the solid waste management law. Such law shall provide for the management on a town-wide basis of all solid waste generated within the town of North Hempstead." *(Id., § 1.)* The statute declared that it is: "the policy of the state of New York with respect to the collection, transportation, delivery, storage, processing and disposal of solid waste in the town of North Hempstead * * * to displace competition with regulation or monopoly public service under the general supervision of the department of environmental conservation". *(Id., § 2.)*

In furtherance of that policy, the Town was "authorized and directed to adopt a local law (1) to exclusively control all solid waste * * * including without limitation the collection, transportation and delivery of solid waste to a designated resource recovery facility or facilities within the town of North Hempstead for storage or processing or for any other disposition or handling", and "(2) to provide for the establishment and collection from time to time of charges as compensation for the service of disposing or handling of such solid waste, all in order to assure a regular solid waste collection and disposal or handling service for the people of the town of North Hempstead." *(Id.)*

Laws of 1980 (ch 552) (ECL art 27), which is referred to in Laws of 1983 (ch 544), provides for the preparation, updating, and implementation of the New York State Solid Waste Management Plan (ECL 27-0103). The stated purpose of ECL article 27 is to assure coordination of State, regional, and local solid waste planning activities and to effect maximum resource recovery from solid waste on a cost-effective basis (ECL 27-0101).

In 1984 the State Legislature amended the Public Authorities Law by adding a new title 13-F (Public Authorities Law § 2049-a *et seq.)* which created the Town of North Hempstead Solid Waste Management Authority (hereinafter Authority). The Authority was given express statutory corporate purposes to, *inter alia,* collect, receive, transport, process, dispose of, sell, recycle, and deal with, in any lawful manner and way, solid waste and any products or by-products generated by the

operation of any facility (Public Authorities Law § 2049-d [5]), to plan, develop, and construct projects and to pay for the cost thereof (Public Authorities Law § 2049-d [6]), to contract with the town, other municipalities, State agencies, public corporations or persons, for the purpose of collecting, receiving, treating and disposing of solid waste, including, without limitation, to contract with municipalities and State agencies for the delivery of all solid waste generated within a stated area to a specific facility (Public Authorities Law § 2049-d [9]), to borrow money and issue bonds (Public Authorities Law § 2049-d [13]), and to fix and collect rates, rentals, fees, and other charges for use of facilities in order to provide sufficient revenue to pay the principal and interest on the bonds (Public Authorities Law § 2049-d [14]).

In addition, Public Authorities Law § 2049-u provided that: "The town and one or more municipalities within the town, or the authority and the town, shall have power to contract from time to time between or among themselves, or among themselves and with the authority in relation to the collecting, receiving, transporting, storage, processing or disposal of solid waste * * * To further the governmental and public purposes of the authority, including the implementation of any contract or proposed contract contemplated by [that law], the authority and all other municipalities within the town shall have power to adopt and amend local laws imposing appropriate and reasonable limitations on competition including * * * local laws requiring that all solid waste generated or originated within their respective boundaries * * * shall be delivered to a specified solid waste management facility. The town shall be empowered under this section to adopt any such local law requiring the delivery of solid waste to a specified solid waste management facility [and] [a]ny such local law shall be adopted in accordance with the procedure provided by the municipal home rule law".

The Authority has the power to issue bonds to pay the cost of any project or for any other corporate purpose (Public Authorities Law § 2049-h [1]), but neither the Town nor the municipalities are liable on such bonds (Public Authorities Law § 2049-j).

## II

In 1986, purporting to act pursuant to the authority vested in it by Laws of 1983 (ch 544) and Public Authorities Law title

13-F, the Town of North Hempstead enacted Town of North Hempstead Code chapter 46, i.e., the Sanitation Code (popularly known as the Town's Flow Control Law). Pursuant to the Flow Control Law, all acceptable solid waste and recyclables generated within the Town, including the municipalities located wholly or partially therein, must be delivered to a solid waste management facility designated by the Commissioner of the Town's Department of Solid Waste Management (Town of North Hempstead Code § 46-14). The Town of North Hempstead Code § 46-2 defined a "solid waste management facility" as "any facility employed beyond the initial solid waste collection process, including but not limited to transfer stations, baling facilities, rail haul or barge haul facilities, processing systems, including resource recovery facilities". By offering this definition, the Town Code tracked the definition of that term in Public Authorities Law § 2049-b (13).

In December 1986 the Town entered into written contracts with most of the incorporated villages within it, including the Incorporated Villages of Mineola, Westbury, and Great Neck Plaza, wherein, in order to induce the Town to maintain a recycling facility, these villages agreed to deliver all recyclables to the Town facility in separated form at no charge to the villages. Pursuant to article II of the agreements, the villages specifically acknowledged "that all activities with respect to solid waste generated or originated within the [villages] must be conducted in compliance with the Sanitation Code of the Town of North Hempstead, Chapter 46 of the Town Code".

On March 15, 1988, the Town and the Authority entered into a Lawful Concession and Solid Waste Service Agreement (hereinafter Service Agreement), pursuant to which the Authority assumed responsibility for solid waste management in the Town, which at the time included operation of the Town's L-5 Landfill located in the Port Washington area. The Town agreed to enforce the Flow Control Law in favor of the Authority and acknowledged that the Authority shall have, from the effective date and throughout the term of the Agreement, the exclusive right to set, collect and receive tipping fees. The term "tipping fees" is defined in article I of the Service Agreement as "that fee set from time to time for disposal of Acceptable Waste at the Landfill or at such other Solid Waste Facility as designated by the Authority".

On the day the Service Agreement was entered into, the Authority purchased a 460-acre tract of land in the town, known as the "Morewood property", for approximately

$34,000,000, to be used for solid waste purposes. At the time of the purchase, the Authority intended to use 60 acres of the 460-acre tract for recycling and resource recovery facilities, with the balance preserved for future use. The property was financed by a note secured by a purchase-money mortgage and a pledge of any tipping fees received by the Authority. The property was later refinanced by National Westminster Bank (hereinafter Nat West), with the Authority again pledging its tipping fees as security.

On December 31, 1988, the effective date of the Service Agreement, the Authority assumed responsibility for handling the Town's waste and took over operation of the L-5 Landfill. All of the Town's sanitation workers were transferred to the Authority.

## A.

The Town and the Authority commenced an action (action No. 1) against the Incorporated Village of Mineola, the Incorporated Village of Westbury, and American Ref-Fuel Company of Hempstead (hereinafter American Ref-Fuel) in March 1991. The complaint, which asserted three causes of action, alleged that Mineola and Westbury were violating the Flow Control Law by having their garbage shipped and processed at an incinerator in the Town of Hempstead operated by American Ref-Fuel. It alleged that the acts of the defendants jeopardize the Authority's operations and threaten all of the Town's residents with loss of garbage disposal services. A permanent injunction was sought (1) restraining the Incorporated Villages of Mineola and Westbury from delivering or disposing of their solid waste in violation of the Town's Flow Control Law and in violation of the Town-Village contracts, and (2) restraining American Ref-Fuel from interfering with the Town-Village contracts and from accepting any solid waste generated within the Town. The Town asserted that the provisions of the Flow Control Law "enacted by the Town pursuant to specific State authorization" required all solid waste generated anywhere within the Town, including the incorporated villages within the Town, to be delivered to a Town-designated solid waste management facility, for which the Town may charge a "tipping fee". The complaint stated that the Flow Control Law is the cornerstone of the Authority's ability to finance its operations and establish necessary solid waste management facilities, as it assures the Authority a steady and substantial stream of income.

The Town noted that since 1983 it has been disposing of most of its waste at the L-5 Landfill in Port Washington, charging "tipping fees" for the acceptance of the garbage. It asserted that Laws of 1983 (ch 544) gave the Town exclusive control over solid waste in the Town and empowered it to adopt a local law that provides for the management on a Town-wide basis of all solid waste generated within the Town, and requires all the incorporated villages to deliver their garbage to one or more solid waste facilities designated by the Town. The Town asserted further that the statute also authorizes it to establish and collect charges, i.e., "tipping fees", for its services of handling and disposing of solid waste. In the Town's view, Public Authorities Law title 13-F reaffirmed and expanded the Town's powers to deal with garbage on a Town-wide basis, including in the incorporated villages.

Additionally, the Town claimed that the Town-Village contracts require the villages, including Mineola and Westbury, to comply in all respects with the Flow Control Law, by delivering their solid waste to a Town-designated facility. The Town alleged that by refusing to deliver their solid waste to the Town-designated facility, Westbury and Mineola were depriving the Authority of needed revenue to operate the existing solid waste management facilities and to finance the facilities which will replace the landfill.

Mineola and Westbury interposed answers in which they admitted to having disposed of their solid waste at American Ref-Fuel's facility. As affirmative defenses, Mineola contended, *inter alia,* that the Flow Control Law is unconstitutional, that pursuant to Public Authorities Law § 2049-u, the Village has the power to direct the flow of solid waste generated within it, that a condition precedent to the Town's right to enforce Laws of 1983 (ch 544) so as to restrict the disposal of solid waste in the Town is the Town's responsibility to provide an approved plan for solid waste collection and disposal or handling for the citizens of the Town, that the Town has failed to satisfy that condition precedent, and that Laws of 1983 (ch 544) was not adopted in accordance with the New York State Constitution and is, therefore, null and void. Mineola sought a judgment declaring Laws of 1983 (ch 544) to be null and void.

As an affirmative defense, Westbury asserted that Laws of 1983 (ch 544) was violative of the Home Rule provisions of New York State Constitution article IX, and was, therefore unconstitutional. It argued that chapter 544 is a "special law",

as defined by New York State Constitution article IX, and was enacted by the Legislature to authorize the Town to adopt a local law for the management of solid waste generated within the Town. It contended that chapter 544 was not adopted pursuant to a Home Rule message of the Town and villages whose powers were thereby affected, nor was it enacted pursuant to a certificate of necessity by the Governor. Westbury contended further that chapter 544 affects its property, affairs and government, by depriving it of its power to collect and dispose of the solid waste generated within its boundaries—a power it has exercised since 1946 pursuant to authority vested in it by the Village Law, the General Municipal Law, and the Municipal Home Rule Law. Westbury asserted that by reason of the foregoing, chapter 544 and all actions taken pursuant thereto, including the "Flow Control Law" are unconstitutional, null and void.

Subsequent to the service of the answers, the Town and the Authority moved for summary judgment in their favor, and for dismissal of all counterclaims asserted by Mineola and Westbury. Both Westbury and Mineola opposed the motion. Westbury further cross-moved for partial summary judgment seeking, *inter alia*, a declaration that both Laws of 1983 (ch 544) and the Town's Flow Control Law are unconstitutional.

## B.

While action No. 1 was pending, the Incorporated Village of Great Neck Plaza (hereinafter Great Neck Plaza) commenced an action (action No. 2) against, *inter alia*, the Town and the Authority, seeking declaratory and injunctive relief, as well as damages, on the grounds that (1) the Town violated Laws of 1983 (chs 544, 545) in that it failed to provide State-mandated resource recovery facilities, and (2) the Town wrongfully collected tipping fees without first establishing and operating a resource recovery facility for the treatment of the Town's nonrecyclable garbage. Great Neck Plaza also noted that in January 1991, the Town repealed in its entirety the 1986 version of the Flow Control Law and enacted a new version, which for the first time imposed criminal penalties for violation of its provisions.

Great Neck Plaza asserted that ECL 27-0107 mandated that the Town undertake and complete a timely process leading to a local solid waste management plan for at least a 10-year period. It noted that the Authority established and levied

"tipping fees" upon the villages within the Town based upon each ton of solid waste generated or originated within their territorial limits that is collected and delivered to the solid waste transfer station designated by the Town. It argued that because the Authority had failed to construct a solid waste management facility which was capable of disposing of such solid waste, the solid waste had to be shipped from the transfer station to out-of-State disposal facilities. Great Neck Plaza also noted that because the tipping fees include charges for debt service of the Nat West loan, acquired for the purchase of the Morewood property, the Authority's operating expenses in attempting to manage the Town's solid waste, as well as finance charges for the development and construction of facilities contemplated for the Morewood property, the tipping fees steadily increased from $40 per ton on November 1, 1986, to $87 per ton on February 25, 1991. Great Neck Plaza alleged further that in 1989, the Town abandoned its efforts to construct a solid waste disposal facility for incineration on the Morewood property, and that due to this failure on the part of the Town to construct a solid waste disposal facility for incineration, the tipping fee may rise in the near future to approximately $150 per ton.

Great Neck Plaza also claimed that despite the Town's failure to construct a solid waste management facility for incineration or other methods of solid waste disposal at the Morewood property, and despite the closure of the L-5 Landfill, the Town is actively enforcing the provisions of its Flow Control Law. Great Neck Plaza claimed it could contract with a carter of its choice for the lawful and proper collection and disposal of all solid waste generated or originated within its boundaries at a cost which is significantly lower than the tipping fee it is required to pay to the Town under the Flow Control Law. Among other things, Great Neck Plaza charged the Town with the wrongful and unlawful exercise of monopoly power, which denied villages their inherent right to dispose of solid waste, and sought a judgment declaring, *inter alia,* that it was not required to continue to pay any "tipping fees" under the currently prevailing circumstances.

The Town interposed an answer, and then moved for summary judgment dismissing Great Neck Plaza's complaint, and for a declaration that the Flow Control Law is valid. Great Neck Plaza opposed the motion and cross-moved for partial summary judgment on its causes of action (1) to enjoin the Town from enforcing its Flow Control Law against Great Neck

Plaza until the Town has commenced construction of a resource recovery facility for nonrecyclable waste which has been approved by the New York State Department of Environmental Conservation, and (2) to enjoin the Town from using any tipping fees collected from Great Neck Plaza for the landfill, the Morewood property, or for any purpose other than the establishment and operation of a resource recovery facility for nonrecyclable solid waste.

## III

 We find that the Supreme Court erred in denying the appellants' motions in both actions and we, therefore, reverse insofar as appealed from, grant both motions, and deny the cross motion, and declare that Laws of 1983 (ch 544) and Town of North Hempstead Code chapter 46 are constitutional and valid. Further, we affirm insofar as cross-appealed from, and upon searching the record, dismiss the causes of action of the Incorporated Village of Great Neck Plaza which are to recover damages.

Statutes enjoy an extremely strong presumption of constitutionality, and while this presumption is rebuttable, the party challenging the constitutionality of the statute bears a heavy burden of proving its unconstitutionality beyond a reasonable doubt *(see, Elmwood-Utica Houses v Buffalo Sewer Auth.,* 65 NY2d 489; *Lighthouse Shores v Town of Islip,* 41 NY2d 7). Only as a last resort should courts strike down legislation on the ground of unconstitutionality *(see, Lighthouse Shores v Town of Islip, supra).*

██ In the case before us, the Incorporated Village of Westbury and the Incorporated Village of Mineola failed to carry their burden of showing that Laws of 1983 (ch 544) is unconstitutional beyond a reasonable doubt. In order to prove that the statute is unconstitutional, it was incumbent on the Villages to demonstrate that the State had no interest in the subject matter of the statute. However, they failed to do so, and have, rather, proceeded on the ground that the Town has mismanaged the trust imposed upon it by the statute. Whatever opinion a court may have on the issue of mismanagement, that subject is nonjusticiable and does not provide a justification for declaring a duly enacted statute unconstitutional. "We know of no authority, and [the Villages] cite none, recognizing any proposition that proof of maladministration or nonadministration of a statute may serve as the predicate for

a judicial declaration that the statute is unconstitutional. The role of the judiciary is to enforce statutes and to rule on challenges to their constitutionality either on their face or as applied in accordance with their provisions. Any problems that result from pervasive nonenforcement are political questions for the solution of which recourse would have to be had to the legislative or executive branches; the judiciary has neither the authority nor the capabilities for their resolution" *(Benson Realty Corp. v Beame,* 50 NY2d 994, 996).

Moreover, it is clear that the State has an interest in solid waste management. Concededly, the villages traditionally were responsible for their own solid waste disposal. However, in 1983 the State Legislature enacted Laws of 1983 (ch 544) which authorized the Town to adopt a local law to "exclusively control all solid waste * * * including without limitation the collection, transportation and delivery of solid waste to a designated resource recovery facility or facilities within the town of North Hempstead for storage or processing or for any other disposition or handling". *(Id.,* § 2.) The Legislature granted the Town this authority so it could "carry out the purposes of chapter five hundred fifty-two of the laws of nineteen hundred eighty, relating to improving the environment by control of air, water and land pollution, and to promote solid waste management planning" (L 1983, ch 544, § 1). The stated purpose of Laws of 1980 (ch 552) (codified as ECL 27-0101), as amended by Laws of 1987 (ch 618) is "to encourage the development of economical projects for the present and future collection, treatment and management of solid * * * waste in such a manner as will assure full consideration of all aspects of planning for proper and effective solid * * * waste disposal, coordinated, so far as practicable, with other related state, regional and local planning activities, and consistent with the protection of the public health, including such factors as * * * water pollution and air pollution control, and the feasibility of regional resource recovery programs" (ECL 27-0101 [1]). Thus, while the disposal of solid waste may be a matter of local concern, the stated purpose of the solid waste statutes show that it is also a matter of State concern, and " 'if the subject be in a substantial degree a matter of State concern, the Legislature may act, though intermingled with it are concerns of the locality' " *(Matter of Town of Islip v Cuomo,* 64 NY2d 50, 56, quoting *Adler v Deegan,* 251 NY 467, 491). In such a case, the statute enacted by the Legislature does not violate the Home Rule provisions of article IX of

the New York State Constitution *(see, Matter of Radich v Council of City of Lackawanna,* 61 NY2d 652; *Matter of Kelley v McGee,* 57 NY2d 522; *Wambat Realty Corp. v State of New York,* 41 NY2d 490; *Robertson v Zimmermann,* 268 NY 52).

Nor is the statute unconstitutional because it provides a funding mechanism for financing the construction of resource recovery facilities *(see, Robertson v Zimmermann,* 268 NY 52, *supra).*

## IV

■ We also find that the Town's Flow Control Law is valid.

In support of their contention that the Flow Control Law is invalid, the Villages cite Town Law § 132, which provides that "[a] rule, regulation or ordinance of a town shall be effective and operative only in that portion of such town outside of any incorporated village or city therein, except as otherwise specifically provided by statute". In this connection, we find that Laws of 1983 (ch 544) and Public Authorities Law title 13-F enable the Town to make and adopt a local law which would be applicable in the incorporated villages with respect to solid waste disposal. The Town's Flow Control Law, requiring the Villages to send their solid waste to a facility designated by the Town, was enacted pursuant to the provisions of Laws of 1983 (ch 544) which authorize the Town to "displace competition with regulation or monopoly public service" by adopting a local law "to exclusively control all solid waste * * * including without limitation the collection, transportation and delivery of solid waste to a designated resource recovery facility or facilities within the town of North Hempstead for storage or processing or for any other disposition or handling" *(id.,* § 2). The statute further provides for the application of any such law on a "Town-wide basis" under the supervision of the New York State Department of Environmental Conservation. That the phrase "Town-wide basis" is intended to encompass the Incorporated Villages within the Town *is* clear, since the Town was authorized to make such a local law in the first place, to carry out the purposes of Laws of 1980 (ch 552), to wit, "to assure coordination of state, regional and local solid waste planning activities and to effect maximum resource recovery from solid waste on a cost-effective basis". *(Town of N. Hempstead v Incorporated Vil. of Westbury,* 153 Misc 2d 225, 227.) The achievement of this goal requires that a facility is guaranteed a steady stream of waste and, to this end, Public

Authorities Law § 2049-u (1) empowers the Town "to adopt any such local law requiring the delivery of solid waste to a specified solid waste management facility".

We note that the Villages point to other similar statutes in the area of solid waste management which explicitly provide for the supersession of municipalities' laws by the laws of the counties or towns within which they are located, if there appears to be an inconsistency, e.g., Broome County Resource Recovery Agency (Public Authorities Law § 2047-t), and Laws of 1989 (ch 80), pertaining to the Town of Smithtown. Concomitantly, we also note that there is a similar law which expressly prohibits such supersession (see, Onondaga County Resource Recovery Agency [Public Authorities Law § 2045-t]). At worst, Public Authorities Law § 2049-u is ambiguous on its face and, therefore, a proper interpretation requires us to examine its purpose. The purpose of the solid waste management statutes in issue is to eliminate competition, and to provide a comprehensive framework for the coordination of solid waste management on a regional basis. We believe that any interpretation which effectively defeats this purpose should not be condoned, unless it is clearly unavoidable.

Moreover, we find that under the agreements between the Villages and the Town, the Villages expressly agreed to comply with the Town's Flow Control Law. Under article II of the agreements the Villages specifically acknowledged "that all activities with respect to solid waste generated or originated within the [Villages] must be conducted in compliance with the Sanitation Code of the Town of North Hempstead, Chapter 46 of the Town Code". While other paragraphs in the contracts make specific references to recyclable solid waste, article II uses the words "solid waste" without qualifying it with the word "recyclable". The language employed is clear and unambiguous, and the intention of the parties must be ascertained from the four corners of the contracts (see, *W.W.W. Assocs. v Giancontieri*, 77 NY2d 157; *Bethlehem Steel Co. v Turner Constr. Co.*, 2 NY2d 456).

Accordingly, the order is reversed insofar as appealed from, on the law, without costs or disbursements, the appellants' motions for summary judgment are granted, the cross motion of the Incorporated Village of Westbury is denied, it is declared that Laws of 1983 (ch 544) and Town of North Hempstead Code chapter 46 are constitutional and valid, and the counterclaims of the Incorporated Village of Westbury and the Incorporated Village of Mineola are dismissed. Further,

the order is affirmed insofar as cross-appealed from, and, upon searching the record, the causes of action of the Incorporated Village of Westbury which are to cover damages are dismissed.

Bracken, J. P., Sullivan, Lawrence and Ritter, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, without costs or disbursements, the appellants' motions for summary judgment are granted, the cross motion of the Incorporated Village of Westbury is denied, it is declared that Laws of 1983 (ch 544) and Town of North Hempstead Code chapter 46 are constitutional and valid, the respondents are permanently enjoined from violating the provisions of Town of North Hempstead Code chapter 46, and the counterclaims of the Incorporated Village of Westbury and the Incorporated Village of Mineola are dismissed; and it is further,

Ordered that the order is affirmed insofar as cross-appealed from, without costs or disbursements, and, upon searching the record, the causes of action of the Incorporated Village of Great Neck Plaza which are to recover damages are dismissed.